[Sac. No. 2824.   In Bank.—August 3, 1920.]

## C. F. ROTH, Appellant, v. RECLAMATION DISTRICT No. 1001, Respondent.

[1] RECLAMATION DISTRICTS — ANNULMENT OF ASSESSMENT — INSUFFI-CIENCY OF PLANS — AMENDMENT AND REASSESSMENT — ACTION TO ANNUL—JUDGMENT NOT RES JUDICATA.—A judgment annulling a reclamation district assessment upon the ground of the insufficiency of the plans is not conclusive on the question of the sufficiency of the plans in a subsequent action to annul a reassessment, where subsequent to the annulment and prior to the reassessment amended plans were filed which, without making any change in the plan of improvement, amplified the description of the work and made the same more definite and certain.

[2] ID.—LACK OF BENEFITS—JUDGMENT RES JUDICATA.—In an action to annul a reclamation district assessment on the ground of insufficiency of plans, a finding that certain lands assessed received no benefits from the improvement is res judicata on the question in a subsequent action to annul a reassessment after the filing of amended plans making the description of the work more definite and specific.

[3] ID.—LAND NOT BENEFITED — FORM OF FINDING — JUDGMENT NOT RES JUDICATA.—In an action to annul a reclamation district assessment, a finding that five tracts of land described as containing 116 acres were not benefited by the improvement is not res judicata in a subsequent action to annul a reassessment, where such tracts in fact contained 181.59 acres, since the acreage not included in the finding may have received benefits.

APPEAL from a judgment of the Superior Court of Sutter County.   G. W. Nicol, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

A. H. Hewitt for Appellant.

W. H. Carlin for Respondent.

WILBUR, J.—Plaintiff brought this action under section 3462 of the Political Code to have an assessment made by the board of supervisors of Sutter County for and on

---

1. What judgments are res judicata, note, 14 Am. St. Rep. 250.

3. Application of doctrine of res judicata to issues in action as to which judgment is silent, note, 6 Ann. Cas. 104.

behalf of Reclamation District No. 1001 annulled on the grounds, among others, that the plans for the improvement contemplated by the Reclamation District were insufficient, and that the lands of the plaintiff were not benefited thereby at all or in proportion to the assessments made thereon. The assessment complained of is a reassessment made by authority of section 3466½ of the Political Code, which authorizes such reassessment, in place of an invalid assessment, "for the purpose of charging said land with its proper proportion of the cost of reclamation." Plaintiff claims that even if the reassessment was thus authorized, the questions involved in his attack upon such reassessment have been already adjudicated in his favor in the previous suit in which the assessment was annulled; that therefore the decision of the trial court holding this reassessment to be valid is against such conclusive evidence. Judgment having been rendered sustaining the reassessment, plaintiff appeals. The respondent, Reclamation District No. 1001, was organized by an act of the legislature in 1911 (Stats. 1911, p. 831). The plans for the reclamation were formulated and filed with the board of supervisors and subsequently from time to time amendments to that plan were filed. Finally, it was determined by the board that the expense of the reclamation would be $851,730, and an assessment therefor was levied and paid and the money expended. It was found that an additional assessment for five hundred thousand dollars was necessary to complete the work of reclamation and provide for a deficit of $466,866.47, and more detailed plans for reclamation were adopted and an assessment therefor levied upon the lands of the district. All said assessments were paid with the exception of that of the plaintiff and two others, who filed objections to the assessment with the board of supervisors, and upon such objections being overruled began an action in the superior court under section 3462, *supra*, to have said assessment annulled. Judgment was therein rendered annulling the assessment of the plaintiffs therein. No appeal was taken and the district proceeded to secure a reassessment, under section 3466½ of the Political Code, which reassessment plaintiff now seeks to have annulled. Plaintiff relies upon the proposition that in his first contest of the assessment it was conclusively adjudged that the plans for the work were so incomplete and uncertain as to invalidate the assessment,

and also that certain tracts of his land were found not to be benefited by the assessment. Respondent relies upon the point that subsequent to the annulment of the assessment, supplemental explanatory and more detailed plans and specifications were filed with the board of supervisors by which the matters uncertain in the first plans and specifications were made definite and certain and that therefore the first decision is not *res adjudicata;* and that the decision of the trial court in this case in favor of the sufficiency of the new plans, being supported by the evidence, should be sustained, and further, that the evidence in this case supports the finding of the court that the lands of the plaintiff were benefited to the amount of the assessment. The assessment declared invalid in the first action was identical in amount with the assessment now under consideration, upon each and every parcel of land owned by the plaintiff. The estimated expenditures proposed by the amended plans relied upon by the respondent are exactly the same to a cent upon every one of the numerous items contained in the original estimate upon which the five hundred thousand dollar assessment was levied. There was no change whatever in the plan of improvement. The amendments, or supplements to the plans, filed with the supervisors, merely amplified the description of the work contemplated by the original plan and assessment for the purpose of making the same more definite. The nature of these changes can be illustrated by one or two instances. The original estimate contained the following items:

"Over cross canal:

"561 ft. 20-foot Trestle at $9 per ft......$5,049.00."

The supplemental report contained the following explanation thereof:

"Over cross canal:

"561 feet 20-feet trestle.................$5,049.00

"The above item of trestle covers one-half of trestle over cross canal in the northwest corner of Section 9, Township 11 North, Range 4 East, known as May Bridge, also one-half of trestle known as Bennett Bridge, all as shown on map filed April 8th, 1914. The cost of the other half of these bridges to be borne by Reclamation District No. 1000."

The original estimate contained the following item: "10 or more bridges over canal at $75.00 each—(Call it) $1,001." The revised estimate contained the additional statement:

CLXXXIII—29

"The above bridges are structures 18 feet long, one to be placed over each tract of land cut in two by said interior drainage canal at a point to be selected by the owner," and refers to a map for more definite location. The amended specifications contained twelve different items in which similar indefinite statements in the original specifications upon which the original assessment was based were amplified and explained. A further difference may be illustrated by the description of the right of way of an interior drainage canal. In the original specifications the description is as follows: "Right of Way—Interior Drainage Canals:—Right of way to be purchased after Sept. 1, 1914, north of Burns property and paralleling the Feather River practically 5 miles of right of way, 50 feet wide; 30.3 acres at $75. $2,270.00." In the supplemental specifications this right of way is described as follows: "Strip of land 50 feet wide beginning at the quarter corner between Sections 10 and 11, Township 11 North, Range 3 East, Mount Diablo Base and Meridian, and extending thence Northerly 5 miles, paralleling Feather River and as indicating on Map showing amended plan of Reclamation District No. 1001, filed with Board of Supervisors of Sutter County, April 8th, 1914, containing 30.3 acres, at $75.00—$2270.00." The character of these items sufficiently illustrates the fact that on the trial of this action the court was dealing with a very different situation with relation to the certainty of the plans and specifications and the location of the work than was before the court upon the first contest, and that the decision upon the first trial that the plans were insufficient and indefinite in the description and location of the work proposed to be done is, therefore, not controlling in the present action. ° The decision of the trial court in the first case may have been based upon the very uncertainties thus corrected by the amended plan. [1] We conclude, therefore, that the question as to the sufficiency of the plans and specifications was open for the adjudication of the trial court in this action.

It is contended that the first adjudication is conclusive upon the question of benefits and that, therefore, the reassessment must be held invalid. The judgment in the first case annulling the assessment is based entirely upon the insufficiency of the plans. It is there adjudged "that the plans of reclamation upon which the assessment referred to

herein were based are illegal and invalid, and the said assessment in so far as it affects any of the land of plaintiff described in said complaint is hereby decreed invalid, and the said assessment is hereby annulled." It was, however, found by the court "that a portion of plaintiff's land included in tracts Nos. 698, 703, 704, 705, and 706, as described on the last assessment list of the district, and containing about 116 acres, was not benefited in any manner or at all by the work done or provided to be done under said plans of reclamation; that since the construction of said cross-canal by defendant, said tracts of land above described have been affected with underground seepage therefrom, which never before affected said lands, to such an extent as to render it impossible to raise any crop thereon." The amount assessed upon these tracts in the original assessment and in the reassessment are as follows: Tract No. 698, $1,183; 703, $730.92; 704, $1,183; 705, $895.70; 706, $1,651.98. In the case at bar, however, the court found that "the amount charged and levied upon each and every tract of land in said district assessed was proportionate in every instance to the whole expense and to the benefit which would result from said work of reclamation; and the amount of the charge so levied upon said tracts of land belonging to the plaintiff was in every instance in proportion to the whole expense and to the benefits which would result from said works of reclamation. That the assessment levied upon the lands of plaintiff was proportionate to the whole expense and to the benefit which would result from said works of reclamation." It was also found by the trial court that the "reassessment was based upon the report and plan under and upon which the assessment now under consideration, namely, said subsequent assessment was based and contains no items or item of work or expense that was not included in the former assessments of the lands of said district; and the plan and report under and upon which the assessment herein referred to, namely, said subsequent reassessment, was based is not a different but the same plan and report upon and under which the other lands of said district were assessed, etc. . . . That, however, before making said subsequent reassessment, and after the fifth day of October, 1914, the plans used in making such general assessment of the lands of said district had been and were elaborated, and in many cases made more specific and certain in

matters of detail. . . . That the plans . . . under which the said subsequent reassessment was made . . . were not different plans either as to the extent and location of certain works of reclamation or otherwise, in substance or in any way, except in said matter of more specific certainty and elaboration. . . . No tract of land owned by plaintiff . . . has been assessed for any sum greater than the benefits which will be derived from the works of reclamation and the amount or sum apportioned to each and every of said tracts is not in any instance in excess of the benefits which will accrue thereto." The court also included in its findings an interpretation of the effect of the previous decree annulling plaintiff's assessments as follows: "And said court by its decision found that the lands of the plaintiff herein, who was the plaintiff in said action, had been assessed on said assessment list dated the eleventh day of February, 1915, in excess of the benefits derived to said land by the said works of reclamation, and that the said assessment had not been made upon any valid or sufficient plan of reclamation . . . and said assessment was by the judgment of said court . . . declared invalid . . . . " [2] While, as we have held above, it is obvious that the judgment based on findings that the plans of reclamation are invalid for uncertainty is not conclusive as to the effect of amended plans in which items are specified with greater certainty, it is equally obvious that a mere increase of certainty in plans which the court is able to say are, notwithstanding such charges, still the same plans, would not increase or alter the benefits to be received by the lands of the plaintiff. In other words, as the court found in the first instance that 116 acres of plaintiff's land was not only not benefited, but was actually damaged, by the improvement made and contemplated, a more perfect description of the contemplated work which damaged plaintiff's land would not be a basis for a conclusion that the land was benefited. Particularly as the work had actually been completed before the first case was tried, and its effect on plaintiff's land already clearly ascertained and shown. The difference between the situation at the first trial and upon the trial of this action is not in a change of plan or of result, but merely in a description of the means by which the result was or is to be achieved. [3] The difficulty in applying the doctrine of *res adjudicata* grows out of the form of the finding as to the

matter of benefits. The five tracts of land described in the
findings as containing 116 acres which were not benefited at
all contained 181.59 acres. So far, then, as the finding is
concerned, each one of these tracts may have contained an
acreage which was benefited to the amount of the assessment,
in which case it is well settled that the assessment would not
be invalid. (*Reclamation Dist.* v. *Hershey*, 160 Cal. 692,
694, [117 Pac. 904]; *Reclamation Dist.* v. *Birks*, 159 Cal. 233,
240, [113 Pac. 170].) The finding, therefore, cannot be con-
sidered as an express finding that any one of the five tracts
of land described therein was not benefited at all. If we
should divide the 116 acres equally among the five tracts of
land, it would leave 15.12 acres in each tract benefited by
the improvement. Nor would it follow that because certain
portions of the land were affected by seepage that such land
was not benefited by the improvement, for, as contended by
the engineers in this case to be the fact, it might be possible
to reclaim such flooded portions of the land by a small addi-
tional expenditure. For the foregoing reason the question
of benefits was open for adjudication in the last case. The
findings against the appellant being based upon conflicting
evidence cannot be reviewed by us. There is ample testimony
to sustain the conclusion of the trial court that such lands
were assessed in proportion to benefits. Some of this testi-
mony is pointed out by the district court of appeal, first dis-
trict, and we quote from its opinion as follows: ". . . it is
quite plain, we think, that the direct testimony of witnesses
called by respondent is abundantly sufficient to sustain the
finding of the lower court. Mr. John Burns, who owns the
adjoining place and has lived there for sixty years, testified
strongly as to the enhancement of the value of the land due
to its reclamation. It is true that he was a little indefinite
as to the amount of increase to be apportioned to each par-
ticular tract of appellant's land, but as we understand his
testimony, it is to the effect that 264 acres of the 379 acres
were increased in value to the extent of $25,000, in round
numbers, whereas the amount of both assessments on the
whole tract was $27,356.44. In his estimates he excluded
the timber lands, consisting of 114 acres or thereabouts.
This portion of the land, however, was covered by the testi-
mony of one J. R. Caldett, who owns a large farm in the
neighborhood and who has resided there for nearly forty

years.   He testified that the timber land was worth about twenty dollars an acre before reclamation and $150 an acre afterward. . . . Another witness, Mr. George B. Green, seems to have covered the whole tract of land.   He testified that a portion of it was worth five dollars to ten dollars per acre before reclamation and one hundred dollars afterward, another portion thirty-five dollars to forty dollars before reclamation and two hundred dollars thereafter, and the balance of the land was increased from one hundred dollars or $150 to $250 or three hundred dollars per acre.''

Judgment affirmed.

Shaw, J., Angellotti, C. J., Lennon, J., Olney, J., and Lawlor, J., concurred.