No. 109.—WILLIAM S. HEARD, plaintiff in error, *vs.* ALLEN B. HEARD, defendant in error.

[1.] A *certiorari* does not lie to correct the decision of a Court convened to hear and determine cases under the Act of 1821, passed for the purpose of quieting and protecting the possession of personal property, &c.

Certiorari, in Heard Superior Court. Heard and decided by Judge BULL, June Term, 1855.

Allen B. Heard sued out before Wm. T. Davis and John J. Hendricks, Justices of the Peace, a possessory warrant against Wm. S. Heard, for the recovery of the possession of a negro woman slave, Esther, alleging in his affidavit, " that on or about the 1st of July, 1853, Wm. S. Heard, by fraud, seduction, or other undue or unlawful means, took and carried away the said slave from the possession of defendant," &c.

The officer arrested the defendant and brought him before the Justices, on the 20th of December, 1854; his Counsel not being present, the Court postponed the trial until the 23d, when the defendant again asked for a continuance, on the ground of an absent witness—remarking, that if the Court would give him one hour he would go to trial whether his witness was present or not. The Court consented. On the trial, the plaintiff proved his possession of the slave in the year 1853, and the admissions of defendant, that he had the slave in possession when arrested by the officer under the warrant.

The Justices committed the defendant to jail, without bail or mainprize, until the said negro woman should be produced; whereupon, the defendant sued out a writ of. *certiorari* to the Superior Court of said county, asking the Court to review and reverse the decision of the Magistrates—

1st. Because the plaintiff embraced several distinct and substantive grounds in his affidavit, as the means by which he lost possession of the said negro woman.

2d. Because the Court forced him to trial without his witness.

3d. Because the plaintiff did not swear positively, but that he was advised and believed, that the negro woman was in the possession of the defendant. At the hearing of the *certiorari*, Counsel for the defendant moved to dismiss the *certiorari*, upon the ground that it will not lie for error committed in the judgment of the Court below, in the trial had upon the return of the possessory warrant. The Court sustained the motion and dismissed the *certiorari*, and Counsel for Wm. S. Heard excepted.

MABRY, for plaintiff in error.

FEATHERSTONE, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

In the case of *Marchman vs. Todd*, (15 *Geo.* 37,) this Court suggested that it was questionable whether or not the Legislature had made suitable provision for carrying into effect the grant of power by the Constitution to the Superior Courts for the purpose of correcting errors by *certiorari*, in some cases where the proceeding by an Inferior Judicatory is of a summary nature—and especially in cases arising under the Act of 1821, for quieting the possession of personal property. Further consideration has satisfied our minds that our legislation on this subject has no application to such cases.

The 54th section of our Judiciary Act of 1799, in direct terms, refers to the writ of *certiorari* issuing to the *Inferior Court*—the county Court so called.

The Act of December 16th, 1811, regulates the granting of the writ of *certiorari* in "a Magistrate's Court," where the case has been "tried by a Jury in said Court." An Act of December 29th, 1838, limiting the time in which a *certiorari* shall be brought, to the period of six months next after the

Heard *vs.* Heard.

case has been determined, refers to this Act of 1811, is amendatory of it, and applies only to cases of *certiorari* granted after a Jury trial in a Justice's Court.

An Act of 1831, authorizes "the prevailing party" to have execution for the costs "in all cases carried up from a Justice's Court," if "the writ of *certiorari* shall be sustained, and a new trial ordered." Thus looking to the definite organization of *a Justice's Court.* But who shall grant an execution for costs in such a case as that before us, if it be sent back, especially if both Magistrates shall have gone out of office ?

An act of December 27th, 1842, refers to cases of *certiorari* granted after a trial *on the appeal* in a Justice's Court.

And the Act of February 21, 1850, allowing the Clerk of the Superior Court to grant the writ of *certiorari*, and rendering the Judge's sanction unnecessary, applies also to cases of *certiorari* from a judgment in a "Justice's Court."

All of these Acts, and the general Constitutional provision by which the Superior Court is empowered to correct errors in Inferior Judicatories, by writ of *certiorari*, (and, together, they constitute our legislation on this subject, we believe,) in our opinion, have application to Courts which have something like permanence in their organization, as the Inferior and Justice's Courts proper, or the Municipal Courts in some of the cities. When error is committed by such Courts, and is taken up for correction, the judgment remitting the cause can be sent back to a judicatory having a definite existence, a fixed organization.

But to whom can such a judgment, in a case like this, be sent, when the error is committed by a Court called together for a temporary purpose, and existing only for the time of the trial ? Suppose the two Justices who tried the case have gone out of office, to whom shall the case be sent ?

It was not the Justice's Court for either of the districts in which the Magistrates presided, nor of both, which tried the case, but it was the Justices themselves, made a Court *pro*

*hac,* by special provision of law—which Court expired with the termination of the trial.

The view we take of this question is strengthened by the action of our Legislature in the case of a *certiorari* to be directed to Justices of the Peace or of the Inferior Court, trying slaves or free persons of color for crimes and misdemeanors, under the Act of December 19th, 1816.

An Act of December 29th, 1829, provides, that in such cases, a *certiorari* may be addressed to such Justices, directing them to certify and send up their proceedings, and gives to the Superior Court the right to make " such order, judgment and decision as shall be agreeable to law and justice." In the second section of the Act, this judgment is termed " the final order and decision," &c.

It will be seen that this Act thus obviates all difficulty or embarrassment in sending the case back to a bench of Magistrates *temporarily convened* by special provision, and especially by making the judgment of the Superior Court final and conclusive.

No such provision has been made for cases like that before us, and we must affirm the judgment of the Court below.