[No. 18679. Department Two. January 16, 1925.]

UNION TRUST COMPANY, *as Executor etc., Appellant,* v.
CARNHOPE IRRIGATION DISTRICT *et al., Respondents.*[1]

WATERS AND WATER COURSES (92)—IRRIGATION DISTRICTS—ASSESS-
MENTS—BENEFITS TO PROPERTY—METHOD OF DETERMINING. Under
Rem. Comp. Stat., § 7436, requiring assessments to be according
to the benefits accruing to the land assessed, an assessment for an
irrigation district according to the area will be set aside as made
upon an unsound and illegal basis, through arbitrary and fraudu-
lent action, where most of the area was subdivided into small lots
which were served by laterals provided as part of the system, while
plaintiff's unplatted property, consisting of one-sixth of the area,
had no lateral service and plaintiff could not make the same use
of the water as the other owners did, without the installation of
similar laterals at his own very considerable expense.

Appeal from a judgment of the superior court for
Spokane county, Lindsley, J., entered April 18, 1924,
in favor of the defendants, dismissing an action to
cancel an assessment roll for an irrigation district,
tried to the court. Reversed.

*T. T. Grant,* for appellant.

*Glenn E. Cunningham* and *Fred J. Cunningham,* for
respondents.

*Williamson & LaBerge* and *Carroll B. Graves, amici
curiae.*

MACKINTOSH, J.—The Carnhope Irrigation District
lies just outside of the city limits of Spokane and is
composed of suburban lands in a variety of sizes and
ownership. The entire district includes less than 200
acres of irrigable land, of which 33.43 acres, located in
the southwest corner of the district, are unplatted in
one contiguous tract and owned by the appellant. The
remaining portion of the district lies nearer to the city

[1]Reported in 232 Pac. 341; 234 Pac. 277.

of Spokane and has been subdivided into lots and blocks and is thickly settled with residences. The map of the district shows that this property has been divided into approximately 642 lots, most of them 35'x135' in area, though a few are 50'x135' and some 50'x129', also some averaging 130'x260'. There are also a few tracts averaging five acres each. The district has installed a pump and erected a reservoir to which water is pumped from a well, where it is distributed to the lands within the district.

In constructing the irrigation district, the district considered that it was proper to touch every individual landowner's property so that he might receive water, regardless of the area owned by him, and in conformity with this theory the district constructed a lateral system in the western portion of the district so that water could be distributed to every lot, and this distribution system is now maintained. It consists of iron pipes laid four feet beneath the surface, most of the pipe being four inches in diameter. No laterals were built through the land of the appellant, but the pipe line touches this land. In order for the appellant to reach all of his 33.43 acres in the same manner as the lots in other portions of the district are reached, it will be necessary to construct laterals throughout his land, and if the appellant does this at his own expense, even by the use of wooden pipes, the expense to him will be approximately $2,500. The entire cost of the system to the district has been $25,000, for which bonds have been issued. It is apparent that each of the lot owners may, by connecting with the laterals in the street in front of his property, bring the water to his land at a trifling expense.

The district made an annual levy of an assessment to pay interest on the bonds and for maintenance. These assessments were made by the board and con-

firmed by it as a board of equalization, on the basis of
$15 per acre throughout the entire district, the appel-
lant's assessment therefor being one-sixth of the en-
tire assessment of the district. The appellant objected
to the assessment, claiming that other lots in the dis-
trict received greater service than his land, and that
he was therefore compelled to pay more to distribute
water over his land than does his neighbor who resides
where there are more pipes. The board refused to
make any reduction in the assessment. This action is
begun for the purpose of having cancelled and set aside
the assessment roll on the ground that, in making the
assessment, the district acted arbitrarily and fraudu-
lently and not in accordance with the rule of law, and
not in accordance with the benefits received by the
lands assessed.

The complaint alleges, and the proof shows, that all
of the lands in the district are of the same general
character, and that the district has, at all times since
it began its operation, furnished available water suf-
ficient for the irrigation of appellant's land; the ap-
pellant claiming that the property to which laterals
have been constructed and which may receive the
available water by merely connecting with these later-
als receive more benefits from the proceeds of the bond
issue than does the appellant's land, and therefore
should be assessed more than his land. The district
claims that the assessment is valid for the reason that
the water has been brought to the land of the appellant
regardless of its area, and therefore that his land has
received the same benefits as the rest and should re-
ceive the same assessment; that the basis in fixing the
ratio of benefits for assessment where the lands are
of the same character agriculturally is the amount of
water furnished and made available for the landowner;
that the inconvenience to which the landowner might

be put with reference to the lands of the district is a matter with which the district need not concern itself, and therefore the district has proceeded on a fundamentally correct basis and the courts cannot interfere with the assessment.

The question to be determined is whether the action of the district is in accordance with the law and the assessments made according to the benefits received. If they were not so made, they were in law made arbitrarily and fraudulently and can be set aside.

Section 7436, Rem. Comp. Stat. [P. C. § 3214], provides the method by which a district shall make assessments necessary for its care, maintenance, repair, improvement, and for completing expense of organization, and reads: "Assessments made to carry out the purposes of this act shall be made in proportion to the benefits accruing to the lands assessed." In other words, that these assessments are to be made in proportion to the benefits received by the various landowners within the district. The theory of assessment for benefits is that the landowner has received, by reason of the improvement, an increase in the market value of his property, and that increase marks the extent of the benefit. This court, in *Otis Orchards Co. v. Otis Orchards Irrigation District No. 1,* 124 Wash. 510, 215 Pac. 23, says:

"It is generally understood that land within a district is benefited by an irrigation system to the extent that the added facilities for irrigation *add to the value of the land itself,* and this does not depend upon the use the owner may make of the water." [Italics ours.]

It is to be borne in mind that this is not a charge upon the property owners for the actual water received, but merely for the expense connected with the creation and operation of the district. Volumes have been written upon the question of benefits, and a multi-

plicity of theories have been advanced by different courts and text writers as to the basis upon which the benefits should be determined, but the sound rule, and the one which it would seem all the authorities are coming to, is that these benefits are to be determined, as we have already indicated, by the increase of the market value of the property affected. It may be that the increase in the market value may be coincident in certain cases with the value of the property, or according to its superficial area, or according to its frontage, or any other measure, but these are mere coincidences and do not furnish the proper basis for the assessment. When the legislature prescribes that the assessment shall be made in proportion to the benefits, it is not within the power of the assessing body to adopt any other rule and to assess according to area or frontage, or in any other manner not provided for in the statute, and an assessment levied on any other basis than that so provided is illegal. As stated in 25 R. C. L. 138:

" . . . and it has been held that an assessment in proportion to the benefit, and not according to the market value, or any other rule, is required when a statute provides respecting a local improvement that each parcel of land benefited shall be assessed its proportional part of the whole cost. The requirement that the value of the benefits shall be assessed means that the assessors shall, from their knowledge, experience, observation and judgment, make a fair and just estimate of the benefit which each particular piece of property will receive by reason of the improvement. . . . In a number of states the theory of benefits is literally adhered to, and it is held that special assessments cannot be levied unless the property charged receives a corresponding physical, material, and substantial benefit from the exaction. And whenever a local assessment upon an individual is not grounded upon and measured by the extent of his particular benefit, it is considered to be, pro tanto, a taking of his private property for public use without any provisions for

compensation.  According to this view each parcel of contributing property in a taxing district for local improvements therein may be assessed only to the extent that it actually receives special benefits, and a taxing district for local improvements may, as a whole, be assessed only to the extent of the sum of the special benefits actually received by the several parcels of contributing property. If, therefore, it can be said as a matter of law that the land will not be specially benefited by the improvement in question—that is, *that its value will not be enhanced*—there can be no special assessment.''

In 1 Page & Jones, Taxation by Assessment, § 11, it is said:

''The theory underlying the doctrine of local assessments of the first type, which is held by the great majority of the courts is that the value of certain property is enhanced by an improvement of a public character, the property thus receiving an especial and peculiar benefit; and that upon such property a part or the whole of the cost of such public improvement is assessed to an amount not exceeding the amount of such benefits.  The owner of the property is therefore under this theory no poorer by reason of the entire transaction, as the assessment only takes from him the equivalent of part or all of the special benefit which the public improvement has conferred upon him; or to state it in another way, the special benefits conferred on him by the public improvement compensate him or more than compensate him for the amount of the assessment which he is obliged to pay.''

In *City of Butte v. School District No. 1,* 29 Mont. 336, 74 Pac. 869, it is remarked:

''The only basis on which special taxation or special assessments can be sustained is that the property subject to the assessments or taxation will be enhanced in value by such improvements to the extent of the burden imposed.''

In *Marion Bond Co. v. Johnson,* 29 Ind. App. 294, 64 N. E. 626, the observation is made that:

"Assessments for street improvements are upheld on the ground that the adjacent property upon which the cost of the improvement is assessed is enhanced in value to an amount equal to the sum assessed against it, and that the owner has received peculiar benefit which the citizens do not share in common."

See, also, *Quill v. City of Indianapolis,* 124 Ind. 292, 23 N. E. 788.

In *Schenley v. Commonwealth,* 36 Pa. St. 29, the holding was that the theory of assessments is:

" . . . that the value of the lots is enhanced by the public expenditure . . ."

This court, in *Spokane Traction Co. v. Granath,* 42 Wash. 506, 85 Pac. 261, quoted with approval the following from *Kirkendall v. City of Omaha,* 39 Neb. 1, 57. N. W. 752:

" 'The word "common" is ordinarily understood to apply to the general public when not qualified by some word or phrase of limitation. The term "general benefits," when unqualified, should probably be accepted in the same sense as the term "common benefits;" that is to say, when there is no limitation expressed, it should be deemed applicable to the general public, rather than as embracing as general but a limited part of the public. . . . The term "special benefits" implies benefits such as are conferred specially upon private property by public improvement, as distinguished from such benefits as the general public is entitled to receive therefrom. . . . If the improvement should result in an increase in the value of the adjacent property, which increase is enjoyed by other adjacent property owners as to the property of each exclusively, the benefit is special, and it is none the less so because several adjacent lot owners derive in like manner special benefits each to his own individual property.' "

In *Williamson v. Reed,* 106 Va. 453, 56 S. E. 174, the court said that benefits "are such as affect the actual use and enjoyment of property and thereby render it more valuable in the market."

In *Williams, Belser & Co. v. Rowell,* 145 Cal. 259, 78 Pac. 725, "benefits" were held to mean enhancement in value. The same court, in *Beveridge v. Lewis,* 137 Cal. 619, 67 Pac. 1040, 70 Pac. 1083, 92 Am. St. 188, observed that general benefits consist in the increase in the value of land common to the community in general, and special benefits increase the value immediately by the construction of the improvement.

Lewis, Eminent Domain (3d ed.), § 702, states that:

"Special benefits are such as affect the actual use and enjoyment of the property, and thereby render it more valuable in the market."

In *Metropolitan West Side El. R. Co. v. Stickney,* 150 Ill. 362, 37 N. E. 1098, 26 L. R. A. 773, and *Fahnestock v. City of Peoria,* 171 Ill. 454, 49 N. E. 496, the supreme court of Illinois holds that benefits are to be measured by the enhanced value of the particular land alleged to be benefited. The supreme court of Nebraska, in *Barr v. City of Omaha,* 42 Neb. 341, 60 N. W. 591, laid down the same rule.

In Hamilton's Law of Special Assessments, § 3, p. 2, it is observed that:

"It was for a long time a theory of the economists that all taxes rested upon the principle of equivalents, and that for every dollar of tax yielded to the authorities, an equivalent was received by the rate payer in protection to life, liberty, or property, or in some other manner. But that position, so far as general taxation is concerned, has long been abandoned, and the only limit to legislative exaction in this direction, where not controlled by some inhibition of the organic law, is the ability to pay. It may amount to confiscation, but when levied within constitutional limits, and where the law of procedure is strictly followed, the judiciary are unable to afford any relief, no matter how severe or destructive the effect. But in the case of special assessments, which had their origin in the theory of benefits

received, it is believed that the only logical, just or economic authority for the exercise of the power is the special benefit received by the property taxed, by reason of the improvement. This view has been sustained upon the highest of authority, as well as upon reason, and it has been authoritatively determined that the exaction from the owner of private property of the cost of a public improvement, in substantial excess of the special benefits accruing to him, is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use, without due process of law. Where there is no benefit there is no ground for the imposition of a tax. If all courts would finally accept this doctrine, so overwhelmingly supported by authority, much of the actual injustice now committed under the guise of special assessments would be abated, and many objections to the exercise of the power would cease to be made.''

And the same author, in § 206 of his work, says:

''The only basis for sustaining a special assessment is that by the proposed improvement the property properly subjected to the assessment will be enhanced in value to the extent of the burden imposed. If it appear from the nature of the work proposed that the market value of abutting or adjacent property would not be increased thereby, as a matter of law it would not be a local improvement, and no declaration of the corporate authorities could make it so.''

After considering the apportionment of assessments such as the one in the case at bar by various methods, including value, frontage, area, cost of work in value to each property, etc., the author comes to consider assessments by benefits, and we quote from his above mentioned work the following sections:

''From what has gone before, we believe it must be deemed certain that assessments according to benefits actually received, is the only logical and practical method of assessment by which practical justice and equity can be obtained by both parties under the system of special assessment. This requires an actual

view of the property by the board of commissioners of appraisement, who are appointed by or under legislative authority, and who are required to estimate the result of the contemplated improvement upon all the property situated within the district.'' (Sec. 232)

''Eliminate the principle of benefits, and nothing remains to justify the imposition of a special assessment. It then becomes, pure and simple, a taking of private property for public use without just compensation, and without due process of law. Courts may continue to evade this principle, or discourse learnedly of the power of the legislative branch of the government, but there can be no greater justification for the refusal of courts to interfere in a case of special assessment where manifest and substantial injustice has been done, than they have to interfere to set aside any unconstitutional enactment that is properly brought before them for review. It is gratifying to note that the apparent trend of judicial opinion is in this direction.'' (Sec. 239.)

''*The only rational view to take of this subject as to what property is subject to special assessment* is the one from the standpoint of enhancement in the market value of the real property affected. *If it is, or may be, enhanced in value by the improvement, it should be subject to assessment; but if it is not so favorably affected, or it is impossible that it should be so benefited, it should not be assessed.*'' (Sec. 287.)

''The assessment of a proportionate share of the cost of a local improvement by the officers of a municipal corporation, upon parties specially benefited thereby, cannot be made in excess of the value of the benefits conferred; but where the improvement directly benefits the property of such parties, the question of the extent of the value thereof must be determined by the proper officers of the corporation. The courts will not interfere in such a case, unless the property assessed is so situated as to render it physically impossible for the improvement to benefit it; or where the mode of levying the assessment excludes the consideration of the question of value of the improvements.'' (Sec. 475.)

''Where the statute requires property to be assessed

to pay for improvements according to the benefits received, it is not sufficient to assess each lot according to its frontage. The commissioners must exercise their judgment as to the amount of benefit each lot receives, and must assess the property accordingly, and the report must show that the assessment has been so made. Under a charter where the cost of street improvements is chargeable to the lots or parcels of land to be assessed 'in proportion to the benefits secured thereby,' an assessment according to the frontage of each lot on the street improved is void, unless it affirmatively appears that it was made upon an actual view of the property and a consideration of the benefits actually accruing to each parcel, even where the charter constitutes the property fronting upon the improvement as the assessment district." (Sec. 480.)

"Where the statute under which an assessment is made provides it shall be in the ratio of benefits and damages resulting, it will be void if made in any other manner, . . . ." (Sec. 497.)

"The enhancement in value of the property assessed is the limit to the amount assessed permitted by either law or logic." (Sec. 706.)

Sanctioned by law and fortified by authority as this rule is, it seems it is the proper one to adopt and one which the respondents should have followed in making the assessment, which should have been in proportion to the benefits accruing to the different properties. It is apparent here that the respondent adopted the area basis, which sometimes may be coincident with the enhancement of the market value basis, but it is not necessarily so, and in the instant case the most casual glance at the map of the district shows it is here not coincident.

In determining the enhancement of the market value a great many elements, of course, are to be taken into consideration; the market value of the property before the improvement, the nature of the soil, topography of the property itself, use of the improvement, its proxim-

ity and availability, its area, frontage, and all the various elements which go to determining the fair market value of a piece of property. This price or value is to be determined as it was before the improvement was in and as it is after the improvement has been constructed. The increase, if any, which the improvement has made in this value is the limit of the benefit which that property has acquired by reason of the improvement. Having determined these various increases in the various pieces of property, then a fair apportionment such as the statute calls for should be made between the different property owners in proportion to the benefits which their property has received. The theory that the benefit is measured by the amount of water furnished by the district or made available to the landowner may be one of the elements which go to make up the determination of the enhancement of the market value of the land, but is not, as the respondent claims, the sole element to be taken into consideration. The availability of the water and the expense of utilizing it to the same extent as it can be utilized by other property owners are elements which go to the determination of the value of the property. The enhancement of the market value of the property is the difference between the value of the property before and after the improvement is in, and takes the situation as it is found when the improvement has been made. The opportunity which is afforded by the improvement for the individual to use it is an element which enters into the value of the property. *Bennett v. City of Emmetsburg,* 138 Iowa 67, 115 N. W. 582; *Power v. City of Helena,* 43 Mont. 336, 116 Pac. 415. As was said by Hamilton in his work above referred to, in § 482 thereof:

"It is the present enhancement in value of the property assessed which authorizes the assessment for ben-

efits; and the future effects of the same improvement or the effect of future contingent improvements, are not to be considered in estimating benefits. Where property cannot be benefited except in case of a subsequent work for which no provision has been made, it cannot be assessed for such improvement. Whatever may be the effect on the market value of property, if the act ordered to be done is a proper subject for consideration, all natural and probable results to flow from the improvement ordered may properly be considered in estimating benefits. But the future action of the city as to ordering additional improvements can be regarded neither as a probable nor natural consequence to flow from the improvement. Thus, where property is taken for extending a street, the commissioners, in assessing actual benefits, have no right to take into consideration the probability of the city ordering a bridge over the river crossed by the street. Benefits assessed must be confined to the improvement ordered. Nor can an assessment be made upon the prospect of a future connection with a sewer unless a drainage district is created which will drain into it, or some provision be made to eventually ensure such connection; nor upon lands lying beyond the terminus of the proposed sewer for benefits to accrue thereafter by an extension of the sewer.''

The contention of the appellant that the district should be compelled to install laterals so that each part of his property shall be reached in the same manner and to the same extent as the lots in the other portions of the district cannot be sustained. There is no such duty upon the district, and its failure to make such provision in regard to the appellant's land is only important in determining the extent, if any, to which the market value of the appellant's land has been enhanced by bringing water to it in the manner in which it has been brought. If the laterals had been constructed as the appellant now desires, then it is probably true his property would receive greater benefit than it receives at present, but that does not create an obligation upon the

district to create that greater benefit, and the failure to do so only restricts the district in the amount of the benefits for which it can assess his property.

The assessment having been made apparently upon an unsound and illegal basis in law, the district is held to have acted arbitrarily and fraudulently, and the assessment is therefore set aside and the matter returned to the authorities of the district to make the proper assessment.

MAIN, FULLERTON, MITCHELL, and HOLCOMB, JJ., concur.

## ON REHEARING.

[*En Banc.* April 1, 1925.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein.