# STATE EX REL. VICTOR ANDERSON v. SOLDIERS BONUS BOARD.[1]

March 6, 1925.

No. 24,479.

**Writ of certiorari does not lie against a special tribunal no longer in existence.**

1. A writ of certiorari will not lie to a special tribunal which has gone out of existence.

**Statutory tribunals to pass on soldiers bonus not in existence.**

2. The special tribunals created by statute to investigate and allow or disallow claims for a soldiers bonus have gone out of existence.

*Headnote 1. See Certiorari, 11 C. J. p. 132, § 89 (1926 Anno).
Headnote 2. See Bounties, 9 C. J. p. 311, § 32a (1926 Anno).

Upon the relation of Victor Anderson the supreme court granted its writ of certiorari directed to the soldiers bonus board. Writ quashed.

*George L. Siegel*, for relator.

*Clifford L. Hilton*, Attorney General, and *Albert F. Pratt*, Assistant Attorney General, for respondent.

TAYLOR, C.

Victor Anderson, in his own behalf and in behalf of 73 other claimants for a soldiers bonus, sued out a writ of certiorari directed to the Soldiers Bonus Board for the purpose of having this court

[1]Reported in 202 N. W. 444.

review the several decisions rejecting their several claims. The writ was issued September 30, 1924, and was served on the adjutant general at 7:30 p. m. of that day. He had been a member of the bonus board during its existence, and when it went out of existence its files and records were deposited in his office.

The adjutant general appeared specially and objected to the proceedings on several grounds in each case. The first objection is, in substance, that the special tribunal created by law to pass upon and allow or disallow these claims has gone out of existence, that in consequence there is no one on whom the writ can be served, and no tribunal that can take any further action in the matter.

The statute under which the claims are asserted is chapter 49, p. 72, Laws of the Special Session of 1919, as amended by chapter 471, p. 774, L. 1921, and chapter 311, p. 442, L. 1923.

The original act created a Soldiers Bonus Board consisting of the state auditor, the state treasurer and the adjutant general, imposed upon that board the duty to examine and approve or disapprove all applications for a bonus, and provided for payment of the claims approved by the board. The amendment of 1921 provided, in section 3, that, "applications for the benefits of this act shall be made and filed on or prior to December 31, 1921, or be forever barred."

It further provided, in section 4, that all applications submitted prior to May 1, 1921, should be passed upon prior to July 1, 1921, and that all applications received after May 1, 1921, should be passed upon, "within sixty days after receipt thereof."

It further provided, in section 10, that "The Soldiers' Bonus Board shall conclude its duties under the provisions of this act and go out of existence June 30, 1922."

Consequently the bonus board had gone out of existence before the passage of the amendment of 1923. This amendment extended the time for filing claims to June 30, 1924. It provided, in section 4, that the administrative duties under the act should be performed by the adjutant general, that all applications received by him should be passed upon, "within sixty days after receipt thereof." and that:

"The Adjutant General shall investigate and ascertain the facts and approve or disapprove upon their merits all applications made and filed subsequent to December 31, 1921, and upon application of the applicant may review any claim heretofore disapproved and not reviewed by the Soldiers' Bonus Board of Review if in the opinion of the Adjutant General the facts set forth in such application might cause him to approve such claim."

The amendment of 1923, in a new section designated as 7a, created a bonus board to issue and sell certificates of indebtedness for the purpose of raising funds with which to pay soldiers' bonus claims, but this new board had nothing whatever to do with the allowance or payment of claims, or with anything involved in the present proceeding, and therefore may be disregarded. The provision of section 10 in the amendment of 1921, previously quoted, was amended to read:

"The Soldiers' Bonus Board and Adjutant General shall conclude their duties under the provisions of this act on September 30, 1924."

Granting the bonus was the voluntary act of the state. No question of vested rights is involved. The claims in question are claims against the state itself, and can only be asserted to the extent, in the manner and within the time authorized by the state. The legislature limited the time for filing applications for the bonus, created a special tribunal to investigate and allow or disallow the claims presented, specified the time within which that tribunal was required to act, and fixed the date on which all its duties under the act were to be concluded.

The original act and the amendment of 1921 constituted the bonus board as such special tribunal. Its powers as such terminated June 30, 1922. The amendment of 1923 constituted the adjutant general as such special tribunal. His powers as such terminated September 30, 1924. He still remained as adjutant general, however, which accounts for the use of different language in terminating his powers under the amendment of 1923 than was used in terminating the powers of the original bonus board under the original act and the amendment of 1921. Notwithstanding this change in language, we

think that the provisions of the amendment of 1923 show plainly that the legislature intended that his powers under the act should cease on September 30, 1924.

No tribunal now exists having jurisdiction of these claims or power to take further action in respect to them. If the action previously taken should be reversed, neither the bonus board nor the adjutant general has power to re-examine or allow them. Certiorari will not lie to a tribunal which no longer exists. We find little authority on the precise question presented.

In People v. Supervisors, 82 N. Y. 275, a writ of certiorari was issued to review the action of the board of supervisors in including in the tax-roll items alleged to be illegal. The warrant for the collection of the tax had been issued and delivered to the collector. The court quashed the writ because the board no longer had jurisdiction of the tax-roll or power to change it.

In Osterhoudt v. Rigney, 98 N. Y. 222, involving the action of a board of audit, the court said:

"But not only is the issuing of the writ discretionary, but to be effectual, it must be prosecuted while the board of audit has jurisdiction of the proceedings. Its jurisdiction of accounts presented for. audit, terminates with the delivery to the supervisor of the schedule of audited accounts, and after that has been done, a *certiorari* directed to the board would be fruitless. * * * The remedy by *certiorari* therefore must be taken, if at all, before the delivery of the certificate of audited accounts to the supervisor."

In People v. Sutphin, 166 N. Y. 163, 59 N. E. 770, it was claimed that a town board, which had disallowed a claim and then adjourned, had thereby lost jurisdiction of the proceeding and that consequently the writ would not lie. The court held that the writ would lie as the board was a continuing body and could act upon the claim thereafter if its former action should be reversed.

In Heard v. Heard, 18 Ga. 739, the writ was dismissed because the tribunal to which it was directed had ceased to exist.

The conclusion reached on this question renders it unnecessary to consider the other questions argued at the hearing. We note, how-

ever, that the writ was not issued until after the statutory time therefor had expired as to most of the claims. G. S. 1923, § 9769.

Writ quashed.