[No. 26046. *En Banc.* May 25, 1936.]

WEYERHAEUSER TIMBER COMPANY *et al., Appellants,* v.
E. F. BANKER, *as Director of the State Depart-
ment of Conservation and Development,
et al., Respondents.*[1]

[1]Reported in 58 P. (2d) 285.

*W. E. Heidinger, Grosscup, Morrow & Ambler, A. N. Whitlock, O. G. Edwards, A. J. Laughon, L. B. daPonte, R. S. Macfarlane,* and *Dean H. Eastman,* for appellants.

*The Attorney General, George G. Hannan, Assistant, Harry H. Johnston,* and *John E. Belcher,* for respondents.

STEINERT, J.—This is an appeal from a judgment dismissing an action founded upon an amended complaint which sought to enjoin the canvassing of the returns, and the certifying of the results, of an election held for the purpose of organizing a flood control district under the provisions of chapter 160, Laws of 1935, p. 511 *et seq.* (Rem. 1935 Sup., § 9663B-1 [P. C. § 2534-81] *et seq.*)

At the 1935 session of the legislature, there was passed and approved an act relating, generally, to flood control within this state. Chapter 164, Laws of 1935, p. 543 *et seq.* (Rem. 1935 Sup., § 9663C-1 *et seq.*) That act declared a state policy for the control of floods and established a method and means for making its policy effective through Federal, state, and local participation therein. State participation, under the act, was limited to flood control projects of duly established flood control districts and of counties acting separately or jointly. The state director of conservation and development, hereinafter referred to as the state director, was authorized to act for the state in

the promotion and operation of any such flood control projects.

To facilitate its policy as declared in chapter 164, p. 543 *et seq.* (Rem. 1935 Sup., § 9663C-1 *et seq.*), the legislature, at the same session, passed chapter 160, Laws of 1935, p. 511 *et seq.* (Rem. 1935 Sup., § 9663B-1 [P. C. § 2534-81] *et seq.*), providing for the establishment, operation and maintenance of flood control districts, for the control, to the extent practicable and by economically feasible methods, of the whole, or any part, of the stream system of any main stream or tributary, and for control against any tidal or other bodies of water within the state.

The organization of a flood control district is provided for, in the last-mentioned act, substantially as follows: A landowners' petition, signed by not less than ten resident owners of lands proposed to be included within the district and to be benefited by the maintenance thereof, and setting forth certain required proof therein, must first be filed with the state director. Upon the filing of the petition, the state director is required to make an investigation as to whether or not the project, as outlined, shows a probable feasibility, is conducive to public welfare, and is consistent with a comprehensive plan of development. If the state director, upon investigation, finds that the project as outlined meets these conditions, he is required to so declare in the report of his findings and to approve the petition, subject to any modification that he may suggest.

Upon such approval, and after the petition and written report have been given an appropriate title, the state director is required to create a boundary commission, consisting of five persons designated in the act, which commission shall consider and determine the feasibility of the project and the boundaries of such

proposed flood control district, and make written report to the state director of its findings. If the commission reports the project feasible, the state director is required to fix a time and place for the commission to meet for the purpose of considering and establishing the boundaries of the proposed district. Notice of the hearing must be published for two weeks. Objections to the establishment of the boundaries for the proposed district may be filed by any person having, or claiming, any interest in lands included within such boundaries. The commission, after a hearing, must establish and define the boundaries so as to subserve the best interests of the district, and to that end may increase or decrease the described area.

In its final order thereon, the commission shall direct the state director to call an election to be held within the district for the purpose of determining whether or not the proposed district, with the boundaries established by the commission, shall be created. The state director must then call an election to determine whether or not such proposed district shall be created. After the election board has canvassed the election returns, the county auditor of the county in which such district is located must certify the result to the state director. A majority of the qualified voters of the proposed district voting on the proposition is necessary to its adoption.

The act further provides that a flood control district may raise revenue by the levy of an annual tax, to the extent of two mills on the dollar in any one year, on all taxable property within the district, or to the extent of five mills on the dollar when a proposition therefor is adopted and assented to by a majority of the qualified voters voting thereon at a general or special election therefor.

On or about June 10, 1935, there was filed with the

state director a landowners' petition praying that a flood control district be established in Pierce county for the control of the stream system of the Puyallup river and its tributaries, under the provisions of chapter 160, Laws of 1935, p. 511 *et seq.* (Rem. 1935 Sup., § 9663B-1 [P. C. § 2534-81] *et seq.*). The state director created a commission to investigate and report upon the feasibility of the project and to fix and establish the boundaries of the district. The commission made its report that the project was feasible. A time was then fixed for a hearing on the matter of establishing the boundaries of the proposed district.

The appellants, who are the owners of about seventy-three thousand acres of timberlands in the proposed district but who did not join in the landowners' petition, filed written objections to the inclusion of their lands, on the ground that none of such lands would be benefited by the creation or maintenance of such district. The objections were overruled, and the commission fixed and established the boundaries to include appellants' lands and designated the name of the proposed district as "Pierce County Flood Control District No. 1." The state director thereupon ordered an election to be held October 22, 1935, at which there should be submitted to the voters the question whether such proposed district should be created and the territory therein established as a flood control district.

Thereupon, the appellants instituted this action, seeking, in their original complaint, to enjoin the holding of the election. A demurrer to the complaint was interposed by the state director and sustained by the court. The election was then held as scheduled.

The appellants thereafter filed an amended complaint in which it was sought to enjoin the canvassing of the returns, and certifying of the results, and, consequently, the creation of the district. At the same

time, the court issued an order temporarily restraining the officials from canvassing the returns and directing them to show cause why the order should not be made permanent. The state director interposed a demurrer to the amended complaint. On the return day of the order to show cause, the parties stipulated that, in order to facilitate matters, testimony might be taken subject to the ruling on the demurrer. The cause was then set for trial, and the temporary restraining order became a temporary injunction. The respondents answered, and the appellants replied, and, on the day of trial, evidence was offered by all parties. At the conclusion of the trial, the court sustained the demurrer to the amended complaint, dissolved the temporary injunction, and ordered the complaint, as amended, dismissed. This appeal followed.

Under eleven assignments of error, appellants present two basic contentions: (1) That the court erred in holding that the proposed district was economically feasible, and (2) that the court erred in holding that chapter 160, Laws of 1935, p. 511 *et seq.* (Rem. 1935 Sup., § 9663B-1 [P. C. § 2534-81] *et seq.*), authorized the inclusion of appellants' lands within the proposed flood control district, even though such lands would not be benefited by the proposed improvement. If appellants prevail upon either contention, the judgment must be reversed.

We rest our decision solely upon the second contention. For that reason, we have not stated all the facts necessary to a consideration of the question of feasibility. Respondents, in turn, raise several questions of procedure which will be considered in the latter part of this opinion.

The primary questions, then, are whether appellants' lands will be benefited by the improvement, and, if not,

whether they may, nevertheless, be included within the proposed district.

At the outset, it is to be noted that the district with which we are here concerned was not created by the legislature, nor was there any legislative determination that the lands included therein would be benefited by the improvement. The particular district was attempted to be created wholly by delegated authority.

As already indicated, evidence was taken at the trial, but at the conclusion thereof the court made no findings or conclusions, but, instead, sustained the demurrer to the complaint as amended. The demurrer admitted the truth of all facts well pleaded in the amended complaint.

Paragraph XI of appellants' pleading reads as follows:

"That the said lands of each and all of the plaintiffs herein [appellants] located within said proposed district are timberlands located at such an elevation that no possible damage could result to the same or any of them by flood or erosion, and that no improvement in the nature of a dam, impounding basin, dike, levee, revetment, bulkhead, riprap or other protection, work, improvement or structure, contemplated or authorized by the law under which said district is proposed to be created could possibly affect said lands or in any way increase their usefulness, their value, or in any manner be of benefit thereto, nor could any of said lands be in any way endangered or damaged from any flood conditions or any cause against which any of such contemplated improvements might afford protection; that the only benefit which could possibly result from any of the contemplated improvements would accrue only to lands other than said lands of the plaintiffs, and located at an elevation far below that of the plaintiffs' said lands."

Not only does the demurrer admit the truth of these allegations, but, in addition to that, they were not denied in the answer. Moreover, looking to the evi-

dence in the case, we are convinced that appellants' testimony fully supports these allegations, and the respondents' evidence, so far from refuting appellants' evidence, for the most part concedes its truth.

According to the testimony of the state director, who testified for respondents, the theory upon which the boundaries of the district were established was that the district was a quasi-municipal corporation with limited taxing powers, and not a special benefit assessment district; that, therefore, the question of benefits to individual property was not considered, except so far as the community generally was benefited; that the district was formed on the theory of including an area sufficient to produce enough money, by a light assessment, to take care of flood control work, and that appellants' timberlands were included because they contributed largely to flood conditions. He further testified that it would be impossible to create a Puyallup flood control district' if the timberlands were excluded.

The state supervisor of hydraulics, who was a member of the boundary commission, was also called as a witness for respondents. He testified, upon cross-examination, that appellants' lands were included for three reasons: (1) Because they were the source of the water causing the damage and therefore were partly responsible for the flood conditions, (2) that appellants would be benefited by the saving of the highways in the damaged portions of the district, and (3) that appellants would be further benefited if the lands of other owners were saved and thus kept on the tax rolls. He also testified that the boundary commission made no attempt to include any lands other than those described in the landowners' petition, even though such other lands were benefited in the same way as appellants' lands were; that the city of Tacoma

would be benefited by the improvement, but was not included in the district, although located nearer to the improvement than were appellants' lands.

The uncontradicted evidence also showed that the boundaries of the proposed district included about two hundred twenty square miles and that the valley area was only about forty-two square miles. Hence it appears that less than twenty per cent of the area of the proposed district is subject to floods, and that the remaining eighty per cent is not benefited, but is nevertheless taxed.

The primary purpose in organizing a flood control district of the kind here is to reclaim, or save, and to benefit particular property. Such districts are analogous to diking, drainage, levee and irrigation districts. The purpose of the improvements contemplated by such projects is either to escape the ravages, or else to secure the benefits, of water and its effects. The powers conferred upon such bodies corporate are not primarily those of government or regulation, or even of taxation, though such powers are conferred to a limited degree as necessarily incident to the main power conferred. The primary and principal power thus granted is that of local improvement of the real estate in the district for the benefit of its owners. *Board of Directors of Middle Kittitas Irr. Dist. v. Peterson,* 4 Wash. 147, 29 Pac. 995; *In re Riverside Irr. Dist.,* 129 Wash. 627, 225 Pac. 636.

That the purpose of the act in question is to benefit the lands of certain owners is disclosed upon the very face of the act itself. It repeatedly speaks of the *lands* to be included in the district. Then, more specifically, § 3, p. 512 (Rem. 1935 Sup., § 9663B-3 [P. C. § 2534-83]), of the act requires the landowners' petition to be filed by resident owners of land to be included in the district "and to be benefited by the main-

tenance thereof." Section 4, p. 512 (Rem. 1935 Sup., § 9663B-4 [P. C. § 2534-84]), requires that the petition shall describe generally "the territory to be benefited." Section 10, p. 514 (Rem. 1935 Sup., § 9663B-10 [P. C. § 2534-90]), requires the state director to mail a copy of his report, with a copy of the petition attached, to the commissioners of each county in which "any of the lands to be benefited from the organization and maintenance of the proposed flood control district are situated." Section 21, p. 517 (Rem. 1935 Sup., § 9663B-21 [P. C. § 2534-101]), has a similar provision with reference to the notice of hearing. Section 22, p. 518 (Rem. 1935 Sup., § 9663B-22 [P. C. § 2534-102]), provides that the course of the boundary lines of the proposed district may be described in the notice with regard generally to the contour of the territory involved and "the benefits which the included lands shall receive from the control of floods therein." Section 25, p. 519 (Rem. 1935 Sup., § 9663B-25 [P. C. § 2534-105]), provides that the commission shall consider

". . . the lands and territory to be benefited by the project and may increase or diminish the area, or change the boundaries thereof to include benefited lands, or exclude lands not benefited thereby: . . ."

The purpose of the act being to benefit the lands within the district, only such lands as will derive a benefit from the improvement may be included therein. *Commissioners of Sangamon & Drummer Drainage Dist. v. Houston,* 284 Ill. 406, 120 N. E. 253; *In re Bonds of Drainage Dist. No. 4,* 22 Ariz. 31, 193 Pac. 833; *Coates v. Board of County Commissioners,* 71 Colo. 241, 205 Pac. 943; *In re Scappoose Drainage Dist.,* 115 Ore. 541, 237 Pac. 684, 237 Pac. 1117, 239 Pac. 193; *People ex rel. Mann v. Allen,* 330 Ill. 433, 161 N. E. 867; *Board of Directors v. Prairie Pipe Line Co.,* 292 Fed. 474; *Myles Salt Co. v. Board of Commis-*

*sioners,* 239 U. S. 478, 36 S. Ct. 204; *Thomas v. Kansas City Southern R. Co.,* 261 U. S. 481, 43 S. Ct. 440; 19 C. J. 618; 9 R. C. L. 645.

By the terms "benefits" and "to be benefited," it is meant that the landowner has received, or will receive, by reason of the improvement, an increase in the market value of his property. *Union Trust Co. v. Carnhope Irr. Dist.,* 132 Wash. 538, 232 Pac. 341, 234 Pac. 277; *Butte v. School Dist. No. 1,* 29 Mont. 336, 74 Pac. 869.

In the case before us, it is not necessary to distinguish between general benefits and special benefits, for, according to the pleadings, as well as the proof, the appellants will receive no benefit from the improvement at all. Their lands were included in the district merely to furnish a source of revenue and possibly because the water therefrom naturally drained to the servient lands below. But neither of these considerations was sufficient to justify their inclusion in the district.

The fact that the burden to be imposed upon appellants is denominated a "tax" instead of a "special assessment" is of no consequence. The purpose sought to be accomplished by the project is special, and the property within the district is to be taxed in order to carry out the will of the landowning petitioners and those similarly situated. The burdens here sought to be imposed are in effect special assessments for local improvements. *Browning v. Hooper,* 269 U. S. 396, 46 S. Ct. 141.

Upon the primary questions, we conclude that appellants are in no way benefited by the proposed improvement and that, therefore, their lands could not be lawfully included in the proposed district.

In this connection, however, we may state that we are not laying down a rule for the government of those

cases which involve disputable benefits to included lands, nor to cases where relief may be fully obtained by a proceeding to contest the tax or assessment levied against specific property within a properly organized district. In this case, it is apparent from the record that, unless appellants' lands were included, the district would not have been organized at all, within the provisions of the act involved.

We now advert, briefly, to respondents' contentions relative to the procedure followed by appellants.

It is first contended that appellants should have applied for a writ of certiorari to review the findings of the boundary commission, and, not having done so within fifteen days after the filing of the report of the commission, they cannot now raise the question of benefits. We do not think that there is any merit in this contention.

Section 26, p. 519 (Rem. 1935 Sup., § 9663B-26 [P. C. § 2534-106]), of the act in question provides that, when the boundary commission shall have established the boundaries of the proposed district and shall have delivered to the state director all papers and records involved in its deliberations, its functions shall thereupon cease and it shall *ipso facto* be dissolved and discharged. It thus appears that, when the commission made its final report, it was immediately dissolved and ceased to exist, and no court could recall it into being to correct any error theretofore made by it.

Certiorari will not lie to a tribunal that no longer exists. *State ex rel. Case v. Mead,* 52 Wash. 533, 100 Pac. 1033; *State ex rel. Northern Pac. R. Co. v. State Board of Equalization,* 140 Wash. 243, 248 Pac. 793; *State ex rel. Anderson v. Soldiers Bonus Board,* 162 Minn. 251, 202 N. W. 444.

Respondents next contend that *quo warranto* is the proper remedy to test the validity of the or-

ganization of the district. They cite *People v. Mc-Donald*, 264 Ill. 514, 106 N. E. 501, Ann. Cas. 1915C, 31. In that case, the court held that *quo warranto* would lie to test the legality of the organization of a drainage district. The case, however, does not hold that *quo warranto* is the only remedy.

■ A court of equity has jurisdiction to enjoin the holding of an election and the canvassing of the returns thereof, when the election is nonpolitical and where property rights are involved. *State ex rel. West Seattle v. Superior Court*, 36 Wash. 566, 79 Pac. 29; *State v. Nicoll*, 40 Wash. 517, 82 Pac. 895; *Gibson v. Campbell*, 136 Wash. 467, 241 Pac. 21. In this case, the election was nonpolitical, and it is quite apparent that the property rights of appellants lie at the very basis of the action.

Finally, respondents contend that the action is premature. No reason is assigned for this contention, and no authority is cited in support of it. We assume that it is based on a statement made by the trial court to the effect that, if appellants' lands were subjected to a tax for benefits which they do not receive, directly or indirectly, they would have their remedy if, and when, the taxes are sought to be collected. That might be true in cases where, as we have already indicated, the question of benefits is a disputable one or where the elimination of certain lands would have no appreciable effect on the district as a whole. But here, we have an entirely different situation. The inclusion or noninclusion of appellants' lands is of such vital importance that the determination of that question also determines, from the practical standpoint, whether the district shall be formed at all. If appellants' lands were eliminated, and the district as thus restricted were retained, then the voters will have adopted a proposition wholly different from that which was in-

itiated by the petition, ratified by the commission, and submitted to the voters at an election.

The judgment is reversed, with direction to the trial court to enter a decree making the temporary injunction permanent.

MAIN, MITCHELL, TOLMAN, BEALS, HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.

MILLARD, C. J. (dissenting)—I dissent. I agree with the trial court that, if appellants' lands are subjected to a tax for benefits which they do not receive, a remedy is available to the appellants when the collection of the tax is sought. I am satisfied that the legislature has the authority to create a district of this character, just as it has the power to create port districts and power districts.

