[L. A. No. 11053. In Bank.—September 23, 1932.]

F. W. COWART et al., Respondents, v. UNION PAVING COMPANY (a Corporation) et al., Appellants.

Arthur M. Ellis for Appellants.

Dorsey & Campbell, J. R. Dorsey and Aldrich & Mack for Respondents.

Erwin P. Werner, City Attorney, Frederick von Schrader and William H. Neal, Assistant City Attorneys, Robert J. Stahl and Loren A. Butts, Deputies City Attorney, H. A. Postlethwaite and Gibson, Dunn & Crutcher, as *Amici Curiae.*

TYLER, J., *pro tem.*—This action was brought to enjoin defendants from proceeding to collect assessments levied under proceedings instituted under the Improvement Act of 1911, and from issuing any bonds under the Improvement Bond Act of 1915.

The work was done under a district plan and was fully and properly completed and the expense thereof was placed against an assessment district. The city of Bakersfield took its initial step to make the improvements in August, 1924, by passing a resolution of intention, number 499, for the paving of M Street for the full length of four blocks. A protest was filed and the city abandoned the proceedings without making any express finding as to whether or not the protest filed was by the owners of a majority of the area of the land within the proposed assessment district. Thereafter, the city council on October 27th passed a new resolution of intention concerning the work. This resolution was numbered 503. The work and the district were substantially different and distinct from that provided in and by the resolution of intention, number 499. A protest was again filed, against the latter resolution. The city council found that it was not a protest of the owners of more than one-half of the area of the property to be assessed. The work was thereafter performed, no attempt being made to enjoin it. After completion of the work, an assessment was filed and a hearing was had upon it. Protests were filed by the owners of certain lands affected thereby on the ground that the assessment was so excessive as to be confiscatory. The protests were overruled by the city council, and the present action followed. After trial the court found, in accordance with the contentions of plaintiffs, that the city council had no power to initiate the proceedings whereby the improvements were made and assess-

ments levied, by reason of the prohibitory clause of the Improvement Act which abated the proceedings for a period of six months under the protests filed to the original resolution of intention. It further found that a full hearing had been denied plaintiffs, and also that the assessment as to certain parcels of land was arbitrary and confiscatory. Judgment went in favor of plaintiffs, and the court issued a permanent restraining order against defendants, enjoining them from issuing any bonds in payment of the assessments on the property of plaintiffs, and from levying or collecting any part of such assessments, or from asserting any claim by reason of the proceedings taken under and following resolution of intention, number 503. A reassessment was denied defendants on the ground that the city council had no jurisdiction to order the work by reason of the protest to the original resolution of intention.

It is respondents' contention that the judgment must be affirmed for the reason, as the trial court found, that the protest to the original resolution was regular and, as further proceedings could not be instituted for a period of six months thereafter by reason of section six of the Improvement Act, the council was without jurisdiction to order the work at the time it did. They further claim that the assessment, being confiscatory, is therefore void.

Defendants frankly concede that the improvements have not produced immediate results commensurate with the amounts of the assessments, and that as to certain of the lots the assessments are confiscatory, and that justice requires that a reassessment be made by reducing the amounts thereof. It is their claim that, even conceding the assessments to be void, the provisions of the Improvement Act are unequivocal, and that they insure a reassessment under the circumstances of the case. In this position they are joined by certain *amici curiae*, including the legal representatives of the city of Los Angeles, who assert that city is vitally concerned in the question because of the fact that it has, through its board of pension commissioners, invested several millions of dollars in improvement bonds issued under reassessments of its fire and police pension funds, and such funds will be jeopardized if a reassessment is denied under the facts of this case.

Plaintiffs claim that a reassessment may not be had for the reason that the board had no jurisdiction to order the work. They argue that if a reassessment can be had under the circumstances here presented, then any protest is but an idle act.

We are of the opinion that the statutory mandate compels a reassessment to be had, and that this is so regardless of the fact that the proceedings from which the original assessment came were without jurisdiction. We will not, therefore, discuss the validity of any of the proceedings leading up to the assessment, as these questions, considering our conclusion, become moot. With the wisdom or justice of the rule requiring a reassessment where the work has been performed we are not here concerned, as the statute requiring a reassessment is clear, specific and mandatory. The provisions of the statute prescribed for making the reassessment constitute an independent proceeding which rests on the basis of benefits arising inevitably from the existence of a completed improvement. Our statute upon the subject is emphatic and all embracive upon the subject. Section 28 of the Improvement Act, as amended in 1923, reads as follows: ''Whenever any assessment heretofore issued or which may be hereafter issued is or shall be void, or unenforceable, for any cause . . . then in any of such events a reassessment therefor may be issued. The true intent and meaning of this section is to make the cost and expense of work or improvement made through an attempted compliance with this act, payable by the real estate benefited by such work or improvement by making a reassessment therefor. . . . A reassessment shall be ordered under any one of three circumstances: . . . Third—Whenever any court of competent jurisdiction in any suit to set aside the lien of any assessment or of any bond representing any assessment, . . . or bond shall in its judgment decree such assessments or bonds to be void, or unenforceable, then it shall in and by its decree direct the making of a reassessment to cover the assessments involved in such suit. . . . ''

It will thus be seen that by the express provisions of the statute a reassessment issues regardless of the fact that the proceedings from which the original assessment came were without jurisdiction, and the court *must* under such circum-

380

stances direct in the same decree the making of a reassessment to cover the assessments involved in the suit.

█ Plaintiffs raise the objection that the statute is unconstitutional. A statute authorizing another assessment for the same improvement is not objectionable as setting aside a pre-existing judgment declaring a former assessment invalid. █ Under the unlimited exercise of authority on questions of tax or assessments, the legislature in the first instance could have provided that the work should be done without the requirement of any kind of a petition or without any provision for a protest. (*Spencer* v. *Merchant,* 125 U. S. 345 [31 L. Ed. 763, 8 Sup. Ct. Rep. 921].) The rule is well established that the mere fact that a judgment of a court has pronounced an assessment void will not preclude the legislature from making provision for a reassessment on such property if it had the original power to provide for such assessment.

Reassessment statutes have been uniformly upheld as constitutional where the consent of the property owner required by statute is lacking. (*Jones* v. *Town of Tonawanda,* 158 N. Y. 438 [53 N. E. 280].) So, also, where a remonstrance was ignored: *Kansas City* v. *Silver,* 74 Kan. 851 [85 Pac. 805]; *Frederick* v. *City of Seattle,* 13 Wash. 428 [43 Pac. 364]; 2 Page and Jones on Taxation, sec. 962. There is no fundamental obligation that the consent or acquiescence of the taxed property owners be obtained at all. (*Nottage* v. *City of Portland,* 35 Or. 539 [76 Am. St. Rep. 513, 58 Pac. 883]; *Blount* v. *City of Janesville,* 31 Wis. 648; *City of Elkins* v. *Harper,* 82 W. Va. 377 [95 S. E. 1033].) Neither is it necessary that there should have been due notice, or even a hearing in the original proceeding. Nor does it make any difference that the owners of the property affected by the assessment made objection to the original proceedings as they progressed. The matter of remonstrance against a proposed work or the obtaining of a sufficient initial petition are not matters affecting the right to reassessment. (*Brown* v. *Silverton,* 97 Or. 441 [190 Pac. 971], where the authorities are extensively discussed.) See, also, *Bellingham Bay etc. Co.* v. *New Whatcom,* 172 U. S. 314 [43 L. Ed. 460, 19 Sup. Ct. Rep. 205]. █ The matter of giving property owners any right of protest whatsoever against a proposed improvement is purely a statu-

tory concession. There is no constitutional requirement that this be done. A reassessment is an independent proceeding in itself. It provides its own notice and gives its own hearing. It rests upon the taxation power for its support, and all questions relative to it are solely legislative, except the single one as to whether the reassessment act gives due notice. The basis for a particular reassessment is the existence of a completed improvement, which is of a kind for which a special assessment might properly have been laid, but where the attempted assessment falls for any cause. There can be no question that the legislature intended that a reassessment should be made in every instance where the work had actually been completed and an assessment had been filed. The positive statutory provision cannot be evaded. The phrase "any cause" includes jurisdictional defects and in fact any cause that could work the result in question. The exercise of the taxing power can be limited only by constitutional restriction and here, as stated, there is none. All the authorities go to the extent of deciding that courts cannot inquire into the policy of the tax, or undertake to limit the authority of the legislature, so long as it is exercised within constitutional limitations, and so long as it appears that it is a proper exercise of the taxing power. (*Nottage* v. *City of Portland, supra; Richman* v. *Board of Supervisors, etc.*, 77 Iowa, 513 [14 Am. St. Rep. 308, 4 L. R. A. 445, 42 N. W. 422]; *Kansas City* v. *Silver, supra.*)

The purpose of the reassessment act is that land benefited by an authorized public work shall not escape the payment of its proportionate share of the expense thereof. The essentials of jurisdiction to order a reassessment are that a public improvement has been made, that an assessment has been imposed or attempted, and that payment thereof has not been had. There is a moral obligation resting upon the property owners benefited by the improvement and an equitable right against the property itself, which the legislature has power to legalize and enforce. (*Getty* v. *City of Syracuse*, 129 Kan. 106 [281 Pac. 883].) The California decisions uphold this view. (*Ferry* v. *O'Brien*, 188 Cal. 629 [206 Pac. 449]; *Hall* v. *Fairchild-Gilmore-Wilton Co.*, 66 Cal. App. 615 [227 Pac. 649]; *California Land Co.* v. *Town of Corte Madera*, 97 Cal. App. 393 [275 Pac. 866].)

These cases are based upon the decision of *Seattle* v. *Kelleher*, 195 U. S. 351 [49 L. Ed. 232, 25 Sup. Ct. Rep. 44], which is cited and discussed at length in the Ferry case, *supra*, together with the case of *Voight* v. *Detroit City*, 184 U. S. 115 [46 L. Ed. 459, 22 Sup. Ct. Rep. 337]. These authorities squarely hold that the basis of the tax is the existence of a completed work, and upon this basis the legislature may proceed as it sees fit, since its power to that end is unrestricted so long as a hearing is given upon the matter of fixing the amount of the reassessment itself. The objections, therefore, that the act is unconstitutional, and that the original proceedings were not conducted fairly, there being a departure from the statutory requirements, can avail plaintiffs nothing, where as here the work has been performed and a reassessment is to be made. (*Schneider Granite Co.* v. *Gast Realty & Inv. Co.*, 245 U. S. 288 [62 L. Ed. 292, 38 Sup. Ct. Rep. 125].)

Respondents present the further argument that, even conceding a reassessment to be mandatory, it could only apply to the lands involved in this suit, and therefore there could be no possible change in the situation here presented. A reassessment is not limited or confined to the lands embraced in the original assessment but, if justice demands, it may be upon an enlarged district where benefits accrue. (Stats. 1923, p. 119; *Cline* v. *City of Seattle*, 13 Wash. 444 [43 Pac. 367]; *People ex rel.* v. *Judson*, 233 Ill. 280, 281 [84 N. E. 233]; *State ex rel.* v. *District Court of Ramsey County*, 95 Minn. 503 [104 N. W. 553]; *Eggerth* v. *City of Spokane*, 91 Wash. 221 [157 Pac. 859]; *Schneider Granite Co.* v. *Gast Realty & Inv. Co., supra*.) In levying a reassessment, all lands benefited by the improvement may be included though originally omitted. The improvements here involved were, as heretofore stated, performed under a district plan. The improvement is of a through street which may benefit large areas at either end of it.

Then again, certain school lands were omitted from the assessment on the theory that they were not taxable. The ground of omission was contrary to the express provisions of the statute. (Improvement Act of 1911, sec. 20g [added 1929] Stats. 1929, p. 1658.)

A portion of the right of way of the Southern Pacific Railway Company lying in the street was also

omitted upon the same theory. In levying an assessment for street improvements in a certain district, a city has the authority to assess railroad property in the district which is used as a part of the general system of the railroad, where the method is the same as that employed in assessing other lands in the district. (*Rutledge* v. *City of Eureka,* 195 Cal. 404 [234 Pac. 82]; *McNeil* v. *City of South Pasadena,* 166 Cal. 153 [48 L. R. A. (N. S.) 138, 135 Pac. 32]; *Southern Pac. R. R. Co.* v. *Stibbens,* 103 Cal. App. 664 [285 Pac. 374]; *Los Angeles Pac. Co.* v. *Hubbard,* 17 Cal. App. 646 [121 Pac. 306].)

In conclusion it may again be stated that the reassessment may attach to all the property found to be benefited by the improvement, whether included in the original district or not. The judgment of the court below, in so far as it declares invalid the assessment as made against the properties of plaintiffs upon the ground that it is confiscatory, is affirmed; in other respects said judgment is reversed.

Preston, J., Waste, C. J., Curtis, J., and Langdon, J., concurred.

SHENK, J., Concurring.—I concur in the judgment and the legal conclusions on which it is based. But I do so reluctantly because the result is a plain indication that the rights of the property owners have by the legislature, supported by the opinion, just about been reduced to nothing. The theory of our laws imposing upon property owners the obligation to pay for paving proceedings has been and is that they shall have some voice in determining whether the work shall be done. Now apparently they have none. The proceedings may now be initiated without their consent or the opportunity to object thereto and, however irregular the conduct thereof, even to the extent of entire invalidity, and even though their property was not included within the assessment district, such property may now be brought in and subjected to an assessment. They should be accorded some rights under the statute. It seems to me highly desirable that the legislature take the necessary steps to accord the property owners some voice in these *in invitum* proceedings and adequately to safeguard the rights so accorded, since the courts under present law are powerless to afford an adequate remedy for obvious abuses.