[Civ. No. 19169. First Dist., Div. One. Mar. 30, 1961.]

MYRA H. HONEGGER, Individually and as Executrix, etc., et al., Plaintiffs and Respondents, v. RECLAMATION DISTRICT NUMBER 1619, Defendant and Respondent; JACK HYATT et al., Interveners and Appellants.

Condon, Dolgin & Page and Douglas R. Page for Interveners and Appellants.

Downey, Brand, Seymour & Rohwer, John F. Downey and George Basye for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

COAKLEY, J. pro tem.*—This case involves questions of operation and maintenance assessments on property lying

*Assigned by Chairman of Judicial Council.

within Reclamation District Number 1619, which, in turn, is located in Contra Costa County. The appeal is by the interveners from a judgment of the superior court of that county.

Unless otherwise indicated all code section references are to the Water Code. And unless otherwise indicated the plaintiff and respondent landowners will be referred to as respondents, the defendant and respondent Reclamation District Number 1619, as the District, and the intervener and appellant property owners as the appellants. The term "supervisors" as used herein shall mean the Board of Supervisors of Contra Costa County. The term "trustees" as used herein shall mean the Board of Trustees of Reclamation District Number 1619.

The facts essential to a disposition of this appeal are as follows: Sections 51320 et seq. of the Water Code provide the method for raising funds for maintenance, repair and operation of reclamation works. The funds are raised through assessments on lands within the reclamation district, and are known as "operation and maintenance assessments" (§ 51326). They differ from so-called "original assessments" the purpose of which is to provide funds for the construction of the reclamation works (§ 51230 et seq.).

In July 1956, the trustees petitioned the supervisors to appoint three valuation assessment commissioners to prepare a new operation and maintenance assessment roll for the District (§ 51346). The supervisors made the appointment and in December 1956, the commissioners filed the proposed new assessment roll with the supervisors (§ 51348). Hearings were noticed and held by the supervisors for the purpose of hearing objections to the proposed assessment roll (§§ 51329-51331). The respondents appeared at the hearings and urged adoption of the roll as prepared, some of the respondents suggesting only minor changes. The respondents did not file written objections to the proposed roll. The interveners filed written objections (§ 51330), contending that the method or theory adopted by the commissioners in preparing the roll was contrary to law, i.e., section 51323, which provides:

"The commissioners shall view and fix upon the district land an assessment valuation per acre for each parcel which is in proportion to the benefits to be derived from the continuance in operation of the district reclamation works."

Following the hearings the supervisors adopted an assessment roll based on an entirely different assessment theory from that proposed by the commissioners. They did so upon

the district attorney's assurance that they had authority to reassess the property within the District and completely change the roll. The board adopted the new roll at a closed hearing. The result of the supervisor's action was to change all but 5 of 1,150 assessment valuations.

Within 30 days thereafter the respondents herein filed their complaint in the superior court, pursuant to section 51333, seeking to correct, modify or amend the assessment valuation contained in the roll approved by the supervisors. The respondents joined as defendants the District and its board of trustees. The interveners, seven property owners, on behalf of themselves and 160 other owners within the District, intervened, filing answers and motions. The trustees of the District then notified each landowner within the District, by mail, of the pendency of the action and invited them to join either as interveners or as plaintiffs. Thereafter the District took a neutral position in the litigation.

Following a trial lasting several days the trial court filed a memorandum of decision, and later, findings and conclusions, which for the purposes of the points raised on appeal may be summarized as follows:

1. "All lands within RECLAMATION DISTRICT No. 1619 receive substantially the same physical benefit from the reclamation works of the District, except for certain parcels containing areas of higher elevations. Parcels containing lands of higher elevation receive a slightly reduced physical benefit from the reclamation works of the district. Except for the slight reduction in benefits to parcels containing land of higher elevation, all lands within RECLAMATION DISTRICT No. 1619 benefit from the continuation in operation of the reclamation works of the District in direct proportion to their relative values." This was the method and theory adopted by the commissioners in preparing their assessment valuations.

2. Although the supervisors held hearings as required by law they wholly ignored the roll prepared by the commissioners, and devised an erroneous and arbitrary formula and applied it mathematically to all parcels of land in the District, the results being wholly different from the valuations fixed by the commissioners.

3. The assessment roll as adopted by the supervisors "does not accurately reflect the relative values of lands within Reclamation District No. 1619, nor does it accurately reflect the physical benefits received from the reclamation works of

the District, nor does it accurately reflect the proper combination of these two elements."

4. The respondents were afforded no opportunity to be heard or to file written objections to the roll as adopted by the supervisors.

The findings are amply supported by the evidence. Under the substantial evidence rule we must accept them. (*Roth* v. *Reclamation Dist. No. 1001* (1920), 183 Cal. 447 [191 P. 890]; *Key* v. *McCabe* (1960), 54 Cal.2d 736 [8 Cal.Rptr. 425, 356 P.2d 169]; *Viner* v. *Untrecht* (1945), 26 Cal.2d 261 [158 P.2d 3]). Our task, therefore, is to determine whether there are errors of law requiring a reversal. We shall consider the appellants' assignments of error in the order in which they appear in their opening brief.

■ I. Was respondents' action barred by Water Code, section 51330, for failure to allege that written objections had been filed with the supervisors? The answer is no.

Section 51330 reads: "No objection to the assessment valuations shall be considered by the board of supervisors, or allowed in any other action or proceeding, unless the objection is made in writing to the board of supervisors before the date of the hearing."

Patently, this section refers to objections to be made to the assessment roll on which the supervisors are required to conduct a hearing, viz., the roll prepared and filed by the commissioners. To argue, as do the appellants, that respondents should have filed written objections to an assessment roll which they favored and which they requested the supervisors to approve and adopt, borders on the ridiculous. ■ Assuming the statute is ambiguous, which we do not concede, the rule is settled that, " 'where the language of a statute is reasonably susceptible of two constructions, one of which in application will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted.' " (*Department of Motor Vehicles* v. *Industrial Acc. Com.* (1939), 14 Cal.2d 189, 195 [93 P.2d 131].)

II. Did the respondents bring the necessary parties defendant before the court? In this connection the appellants argue: First, that four of the five trustees of the District were parties plaintiff in the action and are in effect, suing themselves; Second, that respondents failed to join the board of supervisors which is a necessary party, and to join every land-

owner in the District, all of whom are necessary, if not indispensable parties. Neither of these arguments is valid.

The appellants' first contention is technically correct but only technically so. Respondents' role as trustees does not require them to sacrifice their rights as property owners. The rule against a party suing himself, in a proceeding in which interests adverse to him are only nominally represented has no application under the facts of this case. Here the trustees notified every property owner of the pendency of the action and invited each to participate on either side of the controversy. The District as such took a neutral position. The views and interests of those property owners opposed to the assessment valuations prepared by the commissioners were vigorously and ably presented before the supervisors, the trial court, and on this appeal.

With respect to appellants' argument that the supervisors and all property owners are necessary if not indispensable parties, the rule is thus stated in *Bank of California* v. *Superior Court* (1940), 16 Cal.2d 516, 521 [106 P.2d 879]: "Bearing in mind the fundamental purpose of the doctrine, we should, in dealing with 'necessary' and 'indispensable' parties, be careful to avoid converting a discretionary power or a rule of fairness in procedure into an arbitrary and burdensome requirement which may thwart rather than accomplish justice." Applying that rule to this case, we note first that the real parties in interest are not the supervisors but the property owners on whom the assessment will fall; second, that, every property owner was notified in writing of the suit and afforded an opportunity to participate; third, the cost of joining more than one thousand property owners might well be prohibitive, making respondents' right of court review an empty one; fourth, as noted earlier, every aspect of the case was thoroughly tried. Finally, counsel has referred us to no case holding that the supervisors or the property owners who were not joined are either indispensable or necessary parties. Nor do we find any case construing section 51333 on this point. We observe, however, that section 51333 is similar in language and purpose to section 51259, and that in six of nine reported cases construing section 51259, neither the supervisors nor property owners were named as defendants. The District was the sole defendant in each instance. We, therefore, hold that neither the supervisors nor the property owners who were not joined were either indispensable or necessary parties.

III. The third assignment of error is to the effect that

the supervisors have unlimited power to change the assessment roll prepared by the commissioners; that in adopting an assessment roll the supervisors exercise legislative powers; and (inferentially) that the courts have no authority to set aside the action of the supervisors. This is incorrect for several reasons:

1. Section 51333 expressly authorizes the superior court to correct, modify or *annul* the assessment valuations fixed by the supervisors. ▮▮▮ Nontechnical words of a statute must be given their ordinary and commonly understood meaning. (*Pacific Gas & Elec. Co.* v. *Shasta Dam etc. Dist.* (1955), 135 Cal.App.2d 463 [287 P.2d 841]; 45 Cal.Jur.2d 646.) ▮▮▮ Webster defines "annul" as "to nullify, to abolish . . . to make void by competent authority . . ." (Webster's New International Dictionary, 2d ed., unabridged.)

2. In contrast to the authority of the court with respect to the assessment valuation fixed by the supervisors, as provided in section 51333, we find that with respect to the assessment valuations proposed by the commissioners, the supervisors are authorized only to "modify or amend," the same (§ 51332).

3. Further indicating the legislative intent is the contrast between sections 51247 and 51332. Section 51247 which deals with original assessments authorizes the supervisors to "modify or amend the assessment, *or make a reapportionment of the entire assessment.*" As noted in the preceding paragraph, section 51332, which deals with operation and maintenance assessments, empowers the supervisors merely to "modify or amend."

These and other contrasts in the scope of review by the supervisors of the commissioners' valuations, and by the superior court of the supervisors' valuations, with respect to *original* assessments, on the one hand (§ 51230 et seq.), and to *operation and maintenance* assessments, on the other (§ 51320 et seq.) compel the conclusion that (a) the supervisors do not have authority to disregard the work of the commissioners and, in its place, adopt an assessment roll completely different in its theory of valuation, and in its results; and (b) if, as in this case, the supervisors do so, the court, as it did in this case, may direct that the assessment roll adopted by the supervisors be modified to conform to the assessment roll prepared and filed by the commissioners.

*Hawley* v. *Reclamation Dist. No. 730* (1934), 220 Cal. 271 [30 P.2d 505], fully supports this conclusion. The assessment

in that case appears to have been an "additional assessment" with respect to which the proceedings are the same as in the case of an original assessment (§ 51300). However, the rationale of that case is applicable here because the code sections under construction there (§ 51259) and here (§ 51333), are similar in language and purpose. There, the commissioners, appointed by the supervisors, prepared an assessment valuation ". . . according to their estimates of the benefits derived." The supervisors, following hearings and receipt of objections, substituted a substantially different valuation assessment, affecting all properties, and calling it a reapportionment. Certain property owners brought suit in the superior court, against the district. Various other property owners intervened. The trial court filed findings to the effect that the supervisors acted arbitrarily and abused their discretion, that the assessments complained of exceeded the benefits derived from the work by the plaintiffs, and determined that the benefits were as determined by the commissioners. It rendered judgment for the plaintiffs accordingly.

On appeal the Supreme Court held that ". . . it [the superior court] had jursidiction and power to determine for itself whether, and to what extent, the land owners before it had been benefited by the reclamation work covered by the assessment in question, and had power to declare the assessment invalid in so far as it purported to create a charge against their lands." [P. 277.]

IV. Appellants next urge that the trial court erroneously held that the market value of the land, as a matter of law, is a governing factor in apportioning assessments pursuant to section 51323. The trial court did not so hold.

On the subject of value, the court found that the roll adopted by the supervisors did not accurately reflect the relative values of the lands. But the court also found that (1) except for the knolls and levee parcels, *all* lands received the same benefit, and (2) that the supervisors' roll does not accurately reflect the physical benefit derived by such land. What better yardstick, then, than to spread the assessment on the basis of the value of each parcel, adjusted only for those parcels possessing special physical characteristics, in this case higher elevations with consequent smaller benefits? Obviously, value "governs" only because benefits are equal. This is a far cry from holding that value *per se* is a governing factor.

Further, the code itself, on the subject of assessments, re-

peatedly uses the term "valuation." Logic and common sense compel the conclusion that where benefits are identical, the relative value of the parcels to be assessed is an appropriate if not the most appropriate, method of spreading the assessment.

 V. Appellants' last assignment of error is that the court's finding that the supervisors prepared its roll "by the mechanical application of an arbitrary formula," is not supported by the evidence. We disagree. The transcript contains abundant evidence that that is precisely what the supervisors did. But even if the finding complained of is not entirely correct we would not be justified in disturbing the judgment. The court found, and here again there is abundant support therefor, that (1) the supervisors *wholly* ignored the roll prepared by the commissioners; (2) the results obtained by the supervisors were *wholly* contrary to the valuations fixed by the commissioners; and (3) the supervisors' assessment valuations do not reflect the benefits derived from the reclamation works. As pointed out earlier in this opinion, the sweep of the supervisors' power, in the matter of operation and maintenance assessment valuations, is not so broad as to permit them to wholly disregard the valuations prepared by the commissioners, and, such modifications as the supervisors make must, as in the case of the commissioners' valuation, be based on benefits derived by the respective parcels.

The judgment is affirmed.

Tobriner, Acting P. J., and Duniway, J., concurred.