[Civ. No. 21731.    First Dist., Div. Two.    Aug. 3, 1964.]

W. J. SCHUETRAM et al., Plaintiffs and Appellants, v. GRANADA SANITARY DISTRICT et al., Defendants and Respondents.

Aaronson & Dickerson and Robert J. Hansen for Plaintiffs and Appellants.

Wilson, Harzfeld, Jones & Morton, John E. Lynch and Thomas M. Smith for Defendants and Respondents.

SHOEMAKER, P. J.—Plaintiffs, owners of real property within the sanitary district, brought this action against defendants Granada Sanitary District and the individual members of the board, to enjoin and cancel the levy and collection of assessments levied upon their real property by said district, and decreeing that defendants had no interest in plaintiffs' real property.

The complaint, which was filed on May 15, 1963, after alleging certain jurisdictional matters, set forth that on or about February 4, 1963, the board of defendant district adopted Resolution of Intention No. 68 to acquire and construct certain improvements and to assess the owners of real property within the district for the cost of said improvements; that said improvements consisted of a sewerage system for a portion of said district which would provide sanitary sewers to certain real property within the assessment district and which property was presently served by inadequate and unhealthy sewerage facilities; that the real property owned by plaintiffs was included within said assessment district and was to be assessed for a portion of the cost of the acquisition and construction of these facilities; that at the meeting held on February 4, 1963, said board also adopted Resolution No. 69, preliminarily approving the engineer's report, and Resolution No. 71, appointing March 18, 1963, at 8:30 p.m., as the time for hearing protests to said project; that prior to said hearing, each of the plaintiffs filed with the secretary of the district written protests to their inclusion within the special assessment district proposed under Resolution of Intention No. 68; that these protests were based upon the fact that plaintiffs' real property was already connected to an established sewer, which sewer was adequate and was connected with the sewerage system maintained by the County of San Mateo; that on March 18, 1963, plaintiffs appeared at the regular meeting of the board and orally protested the inclusion of their property within the proposed assessment district; that notwithstanding the fact that plaintiffs' property would not be benefited by the proposed sewerage project, the board overruled plaintiffs' protests at a meeting held on March 25, 1963, and adopted Resolution No. 75, overruling protests on Resolution of Intention No. 68; that at the same meeting the board also adopted

Resolution No. 77, which resolution adopted the engineer's report, confirmed the assessment, and ordered the work and acquisitions; that in overruling said protests, the board acted arbitrarily, fraudulently and in a discriminatory manner; that plaintiffs received notices to pay assessments, which payments were due on May 4, 1963; that plaintiffs' failure to pay these assessments has resulted in their real property being subjected to the issuance of improvement bonds by said district, which bonds will be a lien against said real property; that unless defendants were enjoined from levying the assessments, plaintiffs would suffer great and irreparable harm and the title to their real property would be clouded. As a second "cause of action," the complaint alleged that defendants, by virtue of having levied the above-mentioned assessments, claimed an interest in plaintiffs' real property, which claim was without right but which constituted a cloud on plaintiffs' title.

Defendants, by way of answer and general demurrer, asserted that both counts of the complaint were barred by Streets and Highways Code, section 10400, which provides in relevant part that "The validity of an assessment or supplementary assessment levied under this division shall not be contested in any action or proceeding unless the action or proceeding is commenced within 30 days after the assessment is levied."

The general demurrer was sustained without leave to amend and a judgment of dismissal was entered. Plaintiffs moved for a new trial,[1] which was denied, and plaintiffs appeal from the judgment.

Appellants first contend that the court erred in sustaining the demurrer because it did not appear from the face of their complaint that the action was barred by Streets and Highways Code, section 10400. Appellants assert, more specifically, that section 10400 is contained within Division 12 of the Streets and Highways Code, which division is known as the Municipal Improvement Act of 1913 (see Sts. & Hy. Code, § 10000). Since section 10400 is by its terms applicable

---

[1]Although it was formerly the rule that no motion for new trial could be made following the sustaining of a demurrer (see *Confar* v. *Whelan* (1935) 8 Cal.App.2d 101 [46 P.2d 991]; *Holmes* v. *Justice's Court* (1937) 19 Cal.App.2d 362 [65 P.2d 820]), this rule was abrogated in *Carney* v. *Simmonds* (1957) 49 Cal.2d 84, 87-91 [315 P.2d 305], where the court expressly disapproved both the *Confar* and *Holmes* cases and held that a trial court could reexamine its judgment regardless of whether issues of law, rather than fact, were involved.

only when the assessment sought to be challenged was "levied under this division" (that is, pursuant to the Municipal Improvement Act of 1913), it follows that the demurrer could properly be sustained only if it were apparent from the face of the complaint that Resolution No. 77 (confirming the challenged assessment) was in fact passed pursuant to the Municipal Improvement Act of 1913. Appellants contend that an examination of the complaint leaves this question in doubt, since it is entirely possible that Resolution No. 77 was passed pursuant to the Improvement Act of 1911. (Sts. & Hy. Code, §§ 5000 et seq.) This contention is without merit.

█ The respondent sanitary district, formed pursuant to Division VI, Part I of the Health and Safety Code, was entitled to utilize the procedures authorized by either the Improvement Act of 1911 or the Municipal Improvement Act of 1913. (See Health & Saf. Code, §§ 6400, 6541.) █ However, it is apparent from the face of the complaint that Resolution No. 77 was passed pursuant to the latter act.

Pursuant to the Improvement Act of 1911, the legislative body of a sanitary district[2] proposing to undertake the construction of sanitary sewers and facilities (see Sts. & Hy. Code, § 5101) shall first pass a resolution of intention to order the work done (Sts. & Hy. Code, § 5131) and shall provide therein for the formation of an assessment district (Sts. & Hy. Code, § 5180). Following the publication of the resolution and the hearing of objections (Sts. & Hy. Code, §§ 5132, 5133) the legislative body of the district may pass a resolution ordering the work done. (Sts. & Hy. Code, §§ 5101, 5225, 5240.) The legislative body may then invite bids and award the construction contract to the lowest responsible bidder. (Sts. & Hy. Code, §§ 5241, 5244.) It is only *after* the contractor has fulfilled his contract that the costs of the work may be assessed upon and against the lands in the assessment district. (Sts. & Hy. Code, §§ 5343, 5360.) Following publication and the hearing of objections (Sts. & Hy. Code, §§ 5362, 5366), the assessment may be confirmed. (Sts. & Hy. Code, § 5369.)

The procedure outlined by the Municipal Improvement Act

---

[2]Although it may be noted that the Improvement Act of 1911 refers to the legislative body "of the city," rather than "of the district," (See Sts. & Hy. Code, § 5100), the term "city" includes a "district" authorized to proceed under the act. (Health & Saf. Code, §§ 6541, 6542.)

of 1913 differs substantially from the above. Pursuant to this act, the legislative body of a sanitary district[3] which proposes to construct sewerage facilities (Sts. & Hy. Code, §§ 10102, 5101) shall first adopt a resolution declaring its intention to do so, briefly describing the proposed improvement and specifying the boundaries of the assessment district. (Sts. & Hy. Code, § 10200.) The legislative body shall then order the preparation of a written report containing plans, specifications and other information concerning the proposed improvement, an estimate of the cost of the improvement, a diagram of the assessment district, and a proposed assessment of the total amount of the cost and expenses of the proposed improvement. (Sts. & Hy. Code, §§ 10203, 10204.) After passing on this report, the legislative body shall then give notice of a time and place for hearing protests to the proposed improvement, the extent of the assessment district and the proposed assessment. (Sts. & Hy. Code, §§ 10300, 10310.) In the event that the proposed assessment is confirmed after hearing, the legislative body shall by resolution "order the proposed improvement to be made or acquired, and declare its action upon the report and assessment. The resolution shall be final as to all persons, and the assessment thereby levied upon the respective subdivisions of land in the assessment district." (Sts. & Hy. Code, § 10312.) The act is devoid of any requirement that the construction contract shall have been awarded or the work completed prior to the levy of the assessment.

The complaint in the instant case specifically alleged that Resolution No. 77 adopted the engineer's report, confirmed the assessment, and ordered the work and acquisitions for the proposed improvements. Since the Improvement Act of 1911 does not authorize the making or confirmation of an assessment until the construction contract shall have been performed, it follows that Resolution No. 77 must of necessity have been passed pursuant to the Municipal Improvement Act of 1913. Appellants concede that under such circumstances, Streets and Highways Code, section 10400, was a bar to the action since the complaint was not filed within the prescribed 30-day period.[4]

---

[3] Although this act refers to the legislative body "of any municipality" (Sts. & Hy. Code, § 10100), the term "municipality" includes a "district" authorized to operate under the act. (Sts. & Hy. Code, § 10003; Health & Saf. Code, §§ 6541, 6542.)

[4] Although appellants do not raise this point, it may be noted that the passage of Resolution No. 77 clearly constituted the "levy" of an

■ Appellants next contend that the trial court erred in failing to comply with Code of Civil Procedure, section 472d, which provides that a decision or order sustaining a demurrer must include a statement of the specific ground or grounds upon which it is based. This contention is frivolous. Although it is true that the trial court sustained respondents' demurrer without specifying the ground on which such ruling was based, the demurrer raised no ground other than the statute of limitations prescribed by Streets and Highways Code, section 10400. ■ A failure to comply with Code of Civil Procedure, section 472d, would justify a reversal of the judgment only upon an affirmative showing of prejudice resulting from such irregularity. (*Kyne* v. *Eustice* (1963) 215 Cal.App.2d 627, 635-636 [30 Cal.Rptr. 391].) In the instant case, no prejudice appears.

■ Appellants' third and final contention is that the trial court abused its discretion in denying their motion for new trial, and in refusing to allow them leave to amend their complaint. In support of said motion, appellants filed a declaration averring that on April 1, 1963, respondent board adopted Resolution of Intention No. 83 to enlarge the boundaries of the assessment district so as to include two additional parcels of land and to increase the total amount of the assessment. Appellants' declaration further averred that on April 15, 1963, respondent board adopted Resolution No. 85, which ordered that the changes and modifications provided for in the resolution of intention be made. Appellants now contend that the adoption of Resolution No. 85 had the effect of extending the time within which appellants were entitled to commence the instant proceeding, and thereby challenge the validity of Resolution No. 77. We do not agree.

Pursuant to Streets and Highways Code, section 10313, the legislative body of a sanitary district may make changes in the boundaries of a proposed assessment district, the amounts of the assessments, the work proposed to be done, or the acquisitions proposed. Where such changes result in extending the boundaries of the assessment district, increasing the total amount to be collected, increasing the amount of work to be done or acquisitions to be had, or substituting work or acquisitions in place of those previously provided, the section requires publication and the hearing of protests. Section

assessment within the meaning of Streets and Highways Code, section 10400. (*Fahey* v. *City Council* (1962) 208 Cal.App.2d 667, 676-679 [25 Cal.Rptr. 314].)

10314 provides that written objections to the proposed changes may be filed and shall be heard and passed upon by the legislative body. Section 10315[5] provides as follows: "If no written protests are delivered to the clerk up to the hour set for the hearing, or if the protests are found by the legislative body to be insufficient, or are overruled, the legislative body may order the proposed changes to be made. The decision of the legislative body is final and the provisions and modifications are subject to section 10400." Appellants appear to be arguing that the term "provisions," as employed in section 10315, refers back to the initial resolution which confirmed the assessment and ordered the work and acquisitions for the contemplated improvement. They accordingly assert that the making of the changes and modifications provided for in Resolution No. 85 entitled them to 30 days from and after April 15, 1963, within which to commence a proceeding contesting the validity of Resolution No. 77.

However, Streets and Highways Code, section 10400, provides, as above noted, that the validity of an assessment or supplemental assessment must be contested within 30 days after it is levied. The plain meaning of this section, when read in conjunction with section 10315, is that an assessment becomes final and no longer subject to attack 30 days after levied, and any changes or modifications thereafter made similarly become final 30 days after they are adopted. To construe the term "provisions," as used in section 10315, in such a manner as to extend the time within which to challenge an assessment which has already become final, would contravene the evident purpose of section 10400. Moreover, when section 10315 is considered as a whole, it is obvious that the section refers only to "provisions" included in the legislative body's "decision" ordering "the proposed changes to be made."

It follows that appellants could not amend their complaint to avoid the bar of section 10400.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.

---

[5]Streets and Highways Code, sections 10313-10315, have since been repealed. (Stats. 1963, ch. 349, §§ 2-4.)