[Civ. No. 33100. First Dist., Div. Three. Jan. 27, 1975.]

HERBERT H. HARRISON et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF SAN MATEO COUNTY et al.,
Defendants and Appellants.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, Plaintiff
and Respondent, v.
COUNTY OF SAN MATEO et al., Defendants and Appellants.

854

## Counsel

Keogh, Marer & Flicker, Alan G. Marer, Gerald Z. Marer, for Plaintiffs and Appellants.

Wilson, Jones, Morton & Lynch and Robert G. Auwbrey for Defendants and Appellants.

Ropers, Majeski, Kohn, Bentley & Wagner, Michael J. Brady and Daniel J. Lanahan for Plaintiff and Respondent.

## Opinion

**BROWN (H. C.), P. J.**—This is an appeal from a judgment enjoining the County of San Mateo from the collection of special assessments levied against certain property owners (plaintiffs) within the East Palo Alto-Belle Haven Storm Drain Assessment District, designated as Units I and II, and ordering a refund of assessments already collected.

The storm sewer special assessment was levied by the San Mateo Board of Supervisors (defendants) under the provisions of the Municipal Improvement Act of 1913, as amended (Sts. & Hy. Code, § 10000 et seq.) The amount of the assessment was calculated upon a rainfall runoff coefficient based wholly upon the zoning of the units in question. Two suits were consolidated, that of plaintiff Southern Pacific Transportation Company and a class action brought in behalf of property owners who had filed timely written protests to their individual assessments.

The trial court declared void those assessments on the real property of members of the class on the ground that there was no substantial evidence that the property would obtain a special benefit from the proposed improvements. He further ruled that an invalid method of spreading the assessment was used and that the use of a flat zoning coefficient to measure special benefit without regard to the present use of the property is invalid as a matter of law. It is concluded that the defendants' challenge of these findings is without merit.

The scope of the judgment is also attacked both by defendants and plaintiffs. The defendants argue that this is not a proper class action and that the court may only review the assessments of those people who filed written protests and also appeared to offer evidence at the hearing and must limit itself to grounds specified in the written protests. Plaintiffs argue that the judgment should declare void all assessments in the storm drain district. It is concluded that the plaintiffs' solution must be accepted for reasons of equity.

We first turn to a contention raised by plaintiffs that the defendants' appeal is now moot. On June 20, 1974, Judge Cohn in an action entitled The City of Menlo Park v. The County of San Mateo, No. 17479, ruled that the City of Menlo Park is entitled to withdraw from the storm drain district upon certain conditions. As defendants' attorney points out by letter, Judge Cohn's decision relates only to Unit II and requires the City of Menlo Park to pay the county approximately $500,000 as a condition of withdrawing consent. Furthermore, defendants challenge the decision on its merits. The decision thus clearly does not render the appeal moot.

There is no disagreement between the parties that the power to specially assess property to pay for public improvements is based upon existence of a special benefit to the assessed property. The Supreme Court explained the basis of this principle in *Spring Street Co.* v. *City of Los Angeles* (1915) 170 Cal. 24 at page 30 [148 P. 217]: ". . . That the return to the property owner by way of benefit is, under our system of government, the basic foundation upon which this right [to specially assess] rests, becomes apparent from the consideration that if we are not able to say that the owner for the specific charge imposed is compensated by the increased value of the property, then most manifestly we have a special tax upon a minority of the property owners, which tax is for the benefit of the public and which tax is special, unequal, and ununiform.

"Therefore, the compensating benefit to the property owner is the

warrant, and the sole warrant, for the legislature itself to impose the burdens of the special assessments." (See also *San Diego Gas & Elec. Co. v. Sinclair* (1963) 214 Cal.App.2d 778 [29 Cal.Rptr. 769]; *Safeway Stores, Inc. v. City of Burlingame* (1959) 170 Cal.App.2d 637, 644 [339 P.2d 933].) The Municipal Improvement Act of 1913 under which these assessment proceedings were conducted defines the assessment district in terms of land to be benefited (Sts. & Hy. Code, §§ 10008, 10204).

It is also clear that only a "special benefit" to the property assessed will justify an assessment, not merely "general benefit" inuring to the public as a whole. (*Roberts v. City of Los Angeles* (1936) 7 Cal.2d 477, 491 [61 P.2d 323]; *Lloyd v. City of Redondo Beach* (1932) 124 Cal.App. 541, 546-547 [12 P.2d 1087].) ■ When the special benefit exists, the formula on which the assessments are made must be based on the benefit received. (*Honegger v. Reclamation Dist. No. 1619* (1961) 190 Cal.App.2d 684, 692 [12 Cal.Rptr. 76].)

The trial court based its holding that the assessments were void on its conclusion that there was no substantial evidence of a special benefit to the protesting property owners and, further, that the formula upon which the assessments were based was an invalid method as a matter of law. The findings are related in that the validity of the formula will of necessity depend upon just what the special benefit is. To be specific, plaintiffs argue that when the public improvement to be built is a drainage project, uphill property may not be assessed at all or, at least, at a lower rate than the lower land. The several cases cited in support of this argument, however, all involve cases where the benefit was the prevention of flooding on the assessed land. (See, e.g., *Honegger v. Reclamation Dist. No. 1619, supra,* 190 Cal.App.2d 684, 692; *Myles Salt Co. v. Iberia Drainage Dist.* (1915) 239 U.S. 478, 482-483 [60 L.Ed. 392, 395-396, 36 S.Ct. 204].) When this is the special benefit, it seems obvious that higher land might not be flooded at all or, at least, to a lesser degree than low land. However, if the water from all the properties drained into public property, such as a street, and the pooled water caused odors, mosquitos or a health problem of some nature, all property owners might well be benefited equally regardless of the elevation of their land.

In analyzing the propriety of the court's decision, it is necessary first to identify the benefit which the public improvement will render; next, to determine if the property owners will receive a benefit different from that of the general public; and, finally, to ascertain if the formula on which the assessments are made is based on the benefit received.

■ The benefit to be derived from the drainage system in the case at hand is the prevention of street flooding which occurs during the rainy season in certain spots of the area. There was no testimony of floodings on the private properties themselves and much testimony from people who claimed there was no excess water problem at all in their immediate vicinity even in the streets.

The theory on which the benefit was presented at the administrative hearings was that the general area would benefit by relief of the traffic problems and that those who contribute to the problem should contribute to the solution. It is concluded in agreement with the trial court that this is not a showing of a special benefit to the assessed property. The facilitation of traffic is of general benefit to the community and, thus, if repair and maintenance expenses alone are involved, these are not charged to abutting property owners. (See *Roberts* v. *City of Los Angeles, supra,* 7 Cal.2d 477, 491.) The fact that the traffic problems are seen as caused, not by the rain, but by the property from which the rainwaters drain, is not a basis for levying a special assessment according to the special benefit rule. It is possible, of course, that property abutting a street with a flooding problem would receive a special benefit from draining, for example, in facilitation of ingress and egress from the property or parking. Appellants point to no evidence of such special benefits, and if they exist, they would hardly warrant assessment of all properties in the area regardless of whether they were benefited.

"It is possible that it will suffice if, from the nature of the work, the property can be *presumed* to have received an especial benefit." (*Federal Construction Co.* v. *Ensign* (1922) 59 Cal.App. 200, 210 [210 P. 536].) It is this type of presumption upon which respondents relied in assuming that the property values of all land would rise because of the drainage of the area. This assumes two things—first, that property values will go up and, second, that increase in property values is the type of benefit which alone will warrant special assessments. If increase in property value alone would amount to a "special benefit," then payment of ordinary road maintenance and repair could be upheld on that basis, reasoning that increase in value can be assumed for property which abuts a well-maintained road. This is too tenuous a connection, particularly in the absence of any cost-benefit analysis or evidence. Even more tenuous is the assumption that all property will increase in value regardless of its location in the assessment district. For example, the question arises whether property on high ground several blocks from any streets which flood in the rainy season will enjoy an increase in market value because

the distant street was drained. Obviously, a point will be reached where no increase may be assumed. Defendants, therefore, could not prevail on an increase of market value theory with no evidence upon which the connection between benefit and assessment can be posited. The trial court was correct in holding that there was no substantial evidence of a special benefit.

As this court has concluded that there was no special benefit shown to plaintiffs' property, it is unnecessary to consider whether the trial court was also correct in its conclusion that the city used an invalid method of spreading the assessment.

We turn now to consider the scope of the judgment which is attacked by both plaintiffs and defendants. Defendants argue (1) that the court could only consider attacks by property owners on grounds which had been specified in written protests and on which evidence had been produced in the administrative hearings, and (2) that the action was not a proper class action. Plaintiffs argue that the judgment should extend to all properties within the assessment districts.

In urging their first point, defendants ask this court to accept the following rules: (1) A property owner must specify his ground for attacking his assessment in his written protest and may not urge any other ground at the protest hearing. (2) If he does not appear at the hearing and offer evidence on the ground specified in the written protest, he may not urge that ground in court.

These rules are not contained in the Municipal Improvement Act of 1913 pursuant to which the assessment proceedings of this case were taken. This act provides for a hearing to consider protests to the proposed improvement. (Sts. & Hy. Code, § 10301.) The act also provides that "Any interested person may object to the proposed improvement, the extent of the assessment district, or to the proposed assessment by filing a written protest with the clerk of the legislative body at or before the time set for the hearing." (Sts. & Hy. Code, § 10310.) These written protests furnish the basis upon which to activate the majority protest provision of section 10311, a section which bars further proceedings if a majority of property owners protest and the board does not overrule the protests by a four-fifths vote.

Nothing in the statutory scheme expressly forbids oral protests or

implies waiver of grounds upon which evidence is not presented.[1] Case law, however, has restricted the property owner in a later court action to grounds that he presented to the board. The basic reasoning is that where the property owner has an administrative remedy, he must avail himself of it (see *Duncan* v. *Ramish* (1904) 142 Cal. 686, 696 [76 P. 661]) and that the board is entitled to notice of the objections and an opportunity to act upon them. (*Roberts* v. *City of Los Angeles, supra,* 7 Cal.2d 477, 493; see also *Lambert* v. *Bates* (1902) 137 Cal. 676, 679 [70 P. 777].) In the instant case, a majority of property owners filed written protests—many were on printed forms, others in letter form.[2] The protests from Unit I were read into the record. The some 2,600 protests from Unit II were not read into the record in order to save time. The defendants' assertion that the named plaintiffs did not appear at the hearing is not disputed. Those who did, appeared without attorneys, supporting witnesses or documentation and merely voiced their dissatisfactions when called upon. Respondents stress the large number that appeared and the efforts of the board to move the hearing along expeditiously. Although the chairman stated that he intended to give everyone an opportunity to speak, he announced that "any person interested may express himself either orally or in writing" and requested that speakers avoid repeating statements and information. The fact that over 2,600 protests were to be considered suggests that evidence on each was not required. More significantly, it nowhere appears that protesters were ever informed of the rules which defendants sought to assert to bar their right to pursue their remedies at the hearing and then later at the trial.

■ The trial court correctly refused under these circumstances to hold the protesters subject to a requirement that they appear and each

[1]The Act of 1911 explicitly set forth that objections not in writing were waived. Therefore, cases cited under this act are distinguishable. (See, e.g., *Noyes* v. *Chambers & DeGolyer* (1927) 202 Cal. 542, 545 [261 P. 1006].) The trial court noted in its memorandum decision that there is a practical reason for the distinction between the 1911 Act and the 1913 Act. "Under the 1911 Act, work is already finished when the assessment proceedings are held. A strict waiver policy is necessary to protect the ability to pay for obligations already incurred. Under the 1913 Act, no expenditures or commitments are made prior to assessment."

[2]One printed form reads: "We, the undersigned, property owners of East Palo Alto, hereby enter our protest to the East Palo Alto-Menlo Park Storm Drain Program: Unit I, 1) The cost of the program and assessments are prohibitive and unrealistic where the property owners are concerned. While there is some need—the need of such a vast program is grossly exaggerated and its value is questionable; 2) We feel that the governmental agencies concerned failed to make a proper survey in the initial planning. They should have notified the property owners of the magnitude of the assessments and the program before proceeding this far; 3) With the continual rise in property taxes and living costs this assessment will become an impossible burden to the property owners. The economics in this area should be of prime consideration."

individually assert the ground of lack of special benefit or invalid spread of assessments in order to raise the issue at trial. He also refused to inquire into the adequacy of the statement of grounds contained in each protest. It is concluded that the court's decision was correct in view of the circumstances of the hearing and the fact that the board was not misled as to the substance of the protests. (See *Halsted* v. *County of Sacramento* (1966) 243 Cal.App.2d 584, 589 [52 Cal.Rptr. 637].) That a special assessment can only be levied when a special benefit exists and must be proportionate to the benefit is an elemental requirement of assessment law of which the board can hardly claim ignorance. Furthermore, though each protester did not object to the assessments on these grounds, these grounds were the substance of enough complaints to alert the board to the issue.

The court in *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], discussed an argument similar to that under consideration here. *Friends of Mammoth* was brought as a class action by named plaintiffs who had not themselves appealed in writing and appeared before the board of supervisors as required, although others in the class had done so. The Supreme Court concluded that the purpose of the exhaustion-of-remedies doctrine had been served since the board had learned the contentions later pursued in the class action and had an opportunity to act had it chosen to do so.

It is concluded that the trial court in the instant case correctly allowed the issues of the existence of special benefits and validity of the cost-spread formula to be litigated. ▉ We have also concluded that the case was properly brought as a class action. Although no California precedent exists for a class action to test a special assessment, other states have allowed a class action in such a situation. (See, e.g., *Rafkin* v. *City of Miami Beach* (Fla. 1949) 38 So.2d 836; *Kvello* v. *City of Lisbon* (1917) 38 N.D. 71 [164 N.W. 305, 310-311]; *Keese* v. *City of Denver* (1887) 10 Colo. 112 [15 P. 825, 831]; *Kammeyer* v. *City of Concordia* (1944) 352 Mo. 742 [179 S.W.2d 76].) The instant case fits the requirements articulated by our Legislature and interpreted by our courts.

Code of Civil Procedure section 382 provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." ▉ Under the statute, two requirements must be met to sustain a class action. "The first is existence of an ascertainable class, and the second is a

well-defined community of interest in the questions of law and fact involved." (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].) Even when these factors exist, however, the individual questions to be decided may prove too complex, numerous and substantial to allow the class action (see *Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 912-913 [69 Cal.Rptr. 612, 442 P.2d 692]) or the benefits to be gained may not be significant enough to justify imposition of a judgment binding on absent parties. (See *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 713.)

■ In the instant case, it is undisputed that there is an easily ascertainable class consisting of property owners in the assessment district who filed timely written protests. That there is "a well-defined community of interest" among these protesters is also apparent. Whether the public improvement specially benefited· the property owners in the assessment district and whether a valid formula had been used to spread the assessments are common questions which need not be litigated separately for each individual property owner. Unlike the situation presented in *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701], a recent case called to· our attention by defendants, a decision does not depend upon the characteristics of each parcel of property. The uniqueness of the properties here is irrelevant to the legal issues presented. Furthermore, as plaintiffs urge and the trial court recognized, assessment procedures and complexity of assessment law would often defeat the efforts of the individual small property owner. All lawsuits challenging assessments must be brought within 30 days of the levy. ■ The period starts to run the day the board of supervisors votes by resolution to levy the assessment—here on September 21, 1971. (Sts. & Hy. Code, §§ 10312, 10400; *Fahey* v. *City Council* (1962) 208 Cal.App.2d 667, 676-677 [25 Cal.Rptr. 314]; *Schuetram* v. *Granada Sanitary Dist.* (1964) 229 Cal.App.2d 25, 29 [39 Cal.Rptr. 919].) Plaintiffs assert without contradiction that the 30-day period had already run before any property owner in Unit II was notified that his property had in fact been assessed and that the notices to owners in Unit I were not mailed until October 6, 1971. If the period can run before the property owner is fully informed, respondents' argument that a class action may be the only way to protect most property owners from inadvertent forfeiture of rights, is persuasive. As the Supreme Court pointed out in *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at pages 703-704, class action as a means of relief is based upon considerations of necessity and paramount convenience and the section permitting such actions was

adopted to prevent a failure of justice. If a class action is not permitted in an assessment dispute such as this, only the large property owner such as Southern Pacific could benefit from legal action for the property owner with an assessment of $200 or $300 would find an individual suit unfeasible. The legal expense necessarily incurred by an individual in pursuit of nullifying an unjust assessment would make for a "Pyrrhic victory" even if successful in having the levy set aside.

Defendants also argue that a class action is not proper because all property owners are mutually antagonistic as regards their respective interests, since in any reapportionment of costs, some assessments are bound to go up if others go down. As plaintiffs point out, this objection to the class action is one first raised on appeal. The objection if made below might have allowed a redefinition of the class if, for example, it were argued that "uphill" and "downhill" protesters have adverse interests. ■ Dismissal of the action is not the remedy in a situation where redefinitions of the class is possible. (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875-876, fns. 10, 11 [97 Cal.Rptr. 849, 489 P.2d 1113].) In a larger sense, however, defendants are urging that this antagonism could not be cured because every property owner is interested in a small assessment for himself and a large assessment for others. This overlooks the fact that many allegations are on grounds for nullifying all assessments, for example, on the ground of lack of a special benefit, fraud, racial bias, improper notice. Furthermore, a desire to benefit at the cost of the other property owners is not the type of adversity which will be recognized to defeat a class action. In *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574 [283 P.2d 704], the Supreme Court held that divergent interests among beneficiaries did not defeat the community interest required of a class action because all beneficiaries were legally bound to desire an impartial and capable trustee. Here, all property owners are bound to favor assessments in proportion to benefits. ■ The fact that in a later reassessment proceeding, the members of the class would dispute questions as between themselves does not amount to the kind of "adverse" interest that will preclude the class action. (*Chance* v. *Superior Court* (1962) 58 Cal.2d 275, 287 [23 Cal.Rptr. 761, 373 P.2d 849]; see *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 709; *Hebbard* v. *Colgrove* (1972) 28 Cal.App.3d 1017, 1030-1031 [105 Cal.Rptr. 172].)

■ We are next met with the question of whether the assessments on all properties should have been declared void. We conclude that they should, following the reasoning of *Riverdale etc. Dist. No. 805* v.

*Shimmin* (1914) 24 Cal.App. 595 [141 P. 1070]. In *Riverdale etc. Dist. No. 805* v. *Shimmin,* the trial court voided an entire assessment district on the ground that an invalid method was used to proportion costs of building a levee. On appeal, it was argued that the entire district should not be invalidated when many of the landowners within the district had paid their assessments without complaint. The court, however, upheld the trial court, stating at page 603 that "according to the record before us the inequalities of the assessment are palpable and important and it would be a gross injustice to some of the landowners to enforce the charges as made by the commissioners." In *Weyerhaeuser Timber Co.* v. *Banker* (1936) 186 Wash. 332 [58 P.2d 285], the Supreme Court of Washington held that the entire assessment district was properly invalidated where substantial high ground property was not subject to an assessment, the court stating that it was apparent from the record that, unless appellants' lands were included, the district would not have been organized at all.

Invalidation of all assessments was within the relief requested. In its memorandum decision the court announced its decision to declare null and void the proceedings creating the districts. Defendants objected and the judgment as entered acted only in regard to assessments on properties of the named petitioners and members of the class they represent. If the nonobjecting property owners must now pay assessments for a project which does not convey a special benefit, and is not in accord with a valid formula, inequity will result.

Here, a judgment voiding the entire district would be a judgment against a party to the action, the Board of Supervisors of San Mateo County. The fact that the judgment would have an effect on property owners who were not parties to the action and had not objected to the assessment is an incidental benefit, or detriment, to them, depending upon whether they favored the project and the method chosen to pay for it. Under these circumstances, we find no inconsistency with the proposition that a judgment is void to the extent that it is rendered for or against a person who is not a party. [^]

█ Defendants also argue that the trial court was under a statutory duty to remand for reassessment proceedings. As defendants point out, the reassessment provisions of the Improvement Act of 1911 are incorporated into the Municipal Improvement Act of 1913 under which these assessment proceedings were held. (See *Brenkwitz* v. *City of Santa Cruz* (1969) 272 Cal.App.2d 812, 815 [77 Cal.Rptr. 705].) Reassessment is only proper, however, where a special benefit to the land has been shown

and the assessment has failed for some other cause, regardless of what that other cause might be. The court in *Cowart* v. *Union Paving Co.* (1932) 216 Cal. 375, explained at page 381 [14 P.2d 764, 83 A.L.R. 1185]: "The purpose of the reassessment act is that land benefited by an authorized public work shall not escape the payment of its proportionate share of the expense thereof. . . . There is a moral obligation resting upon the property owners benefited by the improvement and an equitable right against the property itself, which the Legislature has power to legalize and enforce. [Citation.]" (See also *Brenkwitz* v. *City of Santa Cruz, supra,* 272 Cal.App.2d 812, 816-817.) Since we have concluded that no special benefit was conferred on the property by the proposed improvements, it follows that reassessment would be inappropriate.

The judgment is modified to include all assessments within the East Palo Alto-Belle Haven Storm Drain Assessment District, Units I and II, and affirmed as modified. Costs to plaintiffs.

Draper, P. J., and Coughlin, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.